The **TIMKEN COMPANY**, Plaintiff-Appellant,

v.

**UNITED STEELWORKERS OF AMERICA** et al., Defendants-Appellees.

No. 73–1487.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1973.

Decided Feb. 22, 1974.

John F. Buchman, Canton, Ohio, for plaintiff-appellant; Robert M. Rybolt, John F. Buchman, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, on brief.

Rudolph L. Milasich, Jr., Pittsburgh, Pa., for defendants-appellees; Carl B. Frankel, Pittsburgh, Pa., Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., Clayman, Jaffy & Taylor, Columbus, Ohio, on brief; Bernard Kleiman, Chicago, Ill., Joseph M. Coyle, Asst. Gen. Counsel, United Steelworkers of America, Canton, Ohio, of counsel.

Before EDWARDS, CELEBREZZE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from the district court's order upholding the action of an arbitrator in directing the reinstatement of a discharged employee but without back pay. In a dispute over a relatively minor matter, the employee while at work struck a company inspector with his open hand. This was in violation of a company rule which prohibited any employee from striking or fighting with a fellow employee. In case of violation, discharge was prescribed as the penalty. Under the collective bargaining agreement, the employee filed a grievance which eventually reached the arbitrator who found that although the employee violated the rule, discharge was not proper and that the employee should be reinstated. The company insists that the arbitrator exceeded his authority.

█ █ Upon consideration of the Agreement in its entirety, we are per-suaded that the arbitrator had the power to construe and determine its meaning with respect to the issue here presented. It is true that Article III reserved to the company "all the customary and usual rights, powers, functions and authority of management," except as they are "specifically abridged or modified" by the Agreement, which would normally include the right on the part of the company to formulate unilaterally rules of conduct and penalties for violations. It cannot follow from such reserved power that a legitimate dispute could not arise with respect to the method or manner in which the company should exercise its managerial functions or the imposition of penalties in individual cases. Indeed, other contractual provisions indicate that it was the intention of the parties to vest in the arbitrator the authority to determine whether an employee had been discharged "improperly" or without just cause. For example, the first sentence of Article X(B) of the Agreement provided:

In the event an employee shall be discharged from his employment from and after the date hereof and he believes he has been discharged improperly, such discharge shall constitute a case arising under the method of adjusting grievances herein provided.

It is true that the same article goes on in the second sentence to provide that the company shall reinstate any employee, in the event it should be decided that the employee is found not guilty of the matter charged. It is a question of interpretation, however, whether the second sentence of Article X modifies by negative implication the first sentence to the extent that an arbitrator could order reinstatement only in the event of a not guilty finding. It is now axiomatic that matters of interpretation and application of collective bargaining agreements are for the arbitrator and not for the courts. In fact, the Agreement before us in Article IX, specially confers upon the arbitrator the power "to decide grievances involving the *interpreation* or *application* of this Agreement *or dis-*

**1180**

*ciplinary action. . . ."* (Emphasis supplied). Concededly the same article contains the provision that the arbitrator shall have no power to substitute his discretion for the company's discretion in cases where the company is given discretion by the Agreement. This clause [Article IX(3)] could reasonably be interpreted by the arbitrator to refer to the reserved power of the company to exercise the customary functions of management, including the establishment of rules of conduct, but not to impinge upon his explicit authority "to decide grievances involving . . . disciplinary action. . . ." Again the right to construe the contract would be the question presented, a right granted, as we have seen, in specific terms to the arbitrator.

The labor agreement before us is clearly distinguishable from our decision in Local 342, United Automobile, Aerospace, and Agricultural Workers v. T. R. W., 402 F.2d 727, 731 (6th Cir. 1968), cert. den. 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1968), and from the decision of the Fourth Circuit in Textile Workers Union v. American Thread Co., 291 F.2d 894, 899 (4th Cir. 1961).

In *T. R. W.* the contract in unambiguous terms reserved to the company matters pertaining to disciplinary action, including the discharge of employees. In the *American Thread* case, it was held that after the arbitrator had unequivocally found that the discharged employee was in fact guilty of conduct constituting "just cause" for discharge under a collective bargaining agreement, he was not free then to measure the appropriateness of the penalty.

█ In our opinion in the present case the arbitrator could fairly construe the contract to confer upon himself the power to determine whether under the particular facts presented the employee was "properly" discharged, even though he was technically found guilty of committing the act of striking the inspector. Otherwise, the express authority to de-

cide grievances involving "disciplinary action" would be rendered meaningless.

█ It is well established that the courts look with favor upon the procedure of settling employer-employee disputes by arbitration rather than by resort to the courts. If a collective bargaining agreement is unclear and ambiguous in its terms, its construction should normally be determined by the arbitrator. This policy appears to rest upon two grounds: first, it is considered as an expeditious and relatively inexpensive means of settling grievances and thus as a factor in contributing to labor peace, and second, it obviates the enormous burden which would rest upon the judiciary if it should be required to settle, case by case, the endless number of grievances and disputes, many of them over trivial matters, which inevitably occur as between employers and employees. *See* United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); Chambers v. Beaunit Corp., 404 F.2d 128 (6th Cir. 1968).

Affirmed.