**GRAND RAPIDS DIE CASTING CORP., Plaintiff,**

v.

**LOCAL UNION NO. 159, UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS of AMERICA, UAW, Defendant.**

**No. G79–297 CA1.**

United States District Court, W. D. Michigan, S. D.

Feb. 18, 1981.

Charles C. Hawk, and Craig A. Mutch, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for plaintiff.

A. Robert Kleiner, Kleiner & DeYoung, Grand Rapids, Mich., and Judith A. Scott, Detroit, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This matter has come before this Court pursuant to motions for summary judgment filed by both the plaintiff and the defendant. At the February 6, 1981, oral argument on these motions, each party advised the Court that this matter is ripe for adjudication without need of further hearings or consideration conducted by this Court.

This case arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and under the provisions of the United States Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, governing the power of this Court to review and vacate an award handed down by an arbitrator. The plaintiff seeks review of an arbitration award handed down by an arbitrator on February 14, 1979.* The plaintiff claims that the arbitrator's award exceeded his authority as defined in the parties' collective bargaining agreement,** and the plaintiff accordingly asks this Court to vacate that award. The defendant contends, on the other hand, that the essence of the arbitrator's award draws support from the parties' contract, merely constitutes a determination of whether or not there existed "just cause" for the discharge of the employee in question, and cannot be vacated without doing violence to the *Steelworkers Trilogy, United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United*

---

* References to the opinion and award of the arbitrator will be cited as "Award, at ____."

** References to the parties' collective bargaining agreement will be cited by article and section numbers.

*Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

This Court believes that the resolution of the parties' motions for summary judgment may be achieved by balancing and comparing five opinions rendered by the Sixth Circuit. In support of the plaintiff's position are *Amanda Bent Bolt Co. v. International Union, U. A., A., A. C. I. W.,* 451 F.2d 1277, 79 L.R.R.M. 2023 (6th Cir. 1971), *Detroit Coil Co. v. Intr'l Ass'n of M. & A. Workers,* 594 F.2d 575, 100 L.R.R.M. 3138 (6th Cir. 1979), and *Firemen & Oilers, Local 935–B v. Nestle Co.,* No. 78–3649, 105 L.R.R.M. 2715 (6th Cir. 1980). Supporting the defendant's position are *Timken Company v. United Steelworkers of America,* 492 F.2d 1178, 85 L.R.R.M. 2532 (6th Cir. 1974), and *Falls Stamping & Welding Co. v. International Union, U. A., A., A. C. I. W.,* 575 F.2d 1191, 98 L.R.R.M. 2530 (6th Cir. 1978). The plaintiff is correct in advising the Court that *Amanda, Detroit Coil,* and *Nestle* demonstrate how the Sixth Circuit treats awards handed down by arbitrators in utter disregard of the terms of the parties' collective bargaining agreements, or stemming from tortured readings of those contracts. The defendant correctly argues, on the other hand, that *Timken* and *Falls Stamping* show how the Sixth Circuit reviews awards handed down by arbitrators resulting from their interpretation of ambiguous terms in the parties' contracts, including awards resulting in the resolution of legitimate disputes concerning the method or manner in which the employers should exercise their managerial functions or the imposition of penalties in individual cases. Thus, only by comparing the record before this Court with each of the five cases listed above can a proper resolution of the parties' motions for summary judgment result. If this case is more analogous to *Amanda, Detroit Coil,* and *Nestle,* then the plaintiff must prevail. If *Timken* and *Falls Stamping* are more analogous, however, the defendant's motion must be granted.

The issues presented in this case are delicate and require the Court to make a diffi-

cult decision. Fortunately, the Court was afforded superb assistance by counsel in preparing the briefs and in arguing the merits of their respective positions. The difficulty in deciding this case stems in large measure from the inartfully drafted opinion and award of the arbitrator. The Court must determine whether or not his award draws from the essence of the parties' contract. The difficulty arises because of the following paragraph found at the end of the arbitrator's opinion and award:

> I find [a contract] without any alternatives [to the disciplinary procedure outlined in Article V, Section 4 of the contract] is offensive. It is as if the [procedure] is to be held to perform the final execution. This is a significant distortion of due process and subjects the grievant to a merry-go-round of discipline without any significant way to leave the circle. His union can only stand by. I further find that the original suspension (not designated in any way, manner or form as an investigative suspension) shocks the conscience of this arbitrator, and the resulting discharge must be set aside. The parties should revise the language. The grievant has been suspended and that is sufficient. He cannot be tried twice.

Award, at 9. If the essence of the arbitrator's award is based on his reasons as expressed in the paragraph cited above, or if his award is patently influenced by his disdain for the disciplinary procedure outlined by the parties' contract, then the Court believes that it must grant the plaintiff's motion. Accordingly, the Court will not condone a tortured reading of clear and unambiguous language in a contract so that the arbitrator's award may be upheld merely to comply with the mandate of the *Steelworkers Trilogy* if it is apparent from the record that the arbitrator's award is patently influenced by his personal opinion concerning a procedure which both parties before this Court have already agreed to follow. On the other hand, if the arbitrator has merely interpreted an ambiguous contractual provision or has demonstrated a sufficient independent basis for his award, free from influence by his personal opinion

as to the parties' agreed disciplinary procedure, then the Court will sustain the award.

*Underlying Facts and Relevant Contractual Provisions*

Article III, Section 1, of the contract gives the employer the right to establish rules to govern absenteeism and tardiness problems, and further confers on the employer the "sole" right "to relieve employees from duty for lack of work . . . or [for] other legitimate reasons."[1] In exercising the right to establish rules to govern such situations, the employer promulgated the following rules as the policy on absenteeism and tardiness:

*ABSENTEEISM AND TARDINESS*

Employees who are excessively absent or tardy shall subject themselves to disciplinary action ranging from a verbal warning to discharge.

Excessive absenteeism and tardiness shall be defined as follows:

"In excess of two (2) occurrences over a consecutive thirty (30) day period". Each day of absence shall be counted as one (1) occurrence. Each incident of tardiness shall be counted as one-half of an occurrence. This rule applies to any one incident *or any* combination of absences or tardiness.... There is *no* grace period.

. . . . [Emphasis in original.]

Award, at 3. Although the arbitrator's opinion and award did not outline the penalties established by the employer for violation of this absenteeism and tardiness policy, the plaintiff has represented to the Court that the following schedule of penalties was adopted by the employer:

| First Offense | Verbal Warning |
|---|---|
| Second Offense | Written Warning |
| Third Offense | Written Warning and Disciplinary Layoff (3 days) |
| Fourth Offense | Discharge |

Brief in Support of Plaintiff's Motion for Summary Judgment, p. 2.

The contractual provision at issue is Article V, Section 4. This provision is a part of a multiple-step grievance procedure incorporated by the parties as guidelines to follow when various problems in management-labor relations might arise. It is important to understand that this procedure has been adopted by both parties, and each has agreed to be bound by its process, as a result of the bargaining which ostensibly took place prior to each party's agreement to these terms. Indeed, the procedure outlined by these parties in Article V is private law and constitutes a codification of the rules and regulations to which the parties agree to be bound in the resolution of disputes arising out of operations governed by the collective bargaining agreement. Inasmuch as the parties were free to adopt whatever procedure which they might deem appropriate, and inasmuch as they have adopted the procedure found in Article V of the contract, this Court and the arbitrator cannot ignore the procedure set forth in the contract if the situation presented to this Court and presented to the arbitrator squarely falls within these contractual provisions.[2] In relevant part, Article V, Sec-

1. In relevant part, Article III, Section 1, of the parties' collective bargaining agreement provides:

The management of the business, the right to hire, promote, discharge or discipline for cause and to maintain discipline and efficiency of employees, to establish rules, to suspend or transfer, subject to seniority and grievance procedure, the right to relieve employees from duty for lack of work, or other legitimate reasons, are the sole rights of the Company, except as specifically limited by this contract.

Accordingly, the employer's "sole" right to discharge or discipline employees is conditioned on exercising these prerogatives with just cause for doing so. The arbitrator's award is premised on a determination of whether or not the company's discharge of the problem employee in this case constituted a discharge with just cause.

2. Indeed, the arbitrator clearly was aware that his power to arbitrate the dispute was limited. Article V, Section 1(c), of the contract provides, in relevant part:

. . . The arbitrator shall have authority to interpret this Agreement and apply it to the particular case under consideration, but he shall have no authority to add to, subtract from, or in any manner change or modify the terms of this Agreement, nor to arbitrate wages or job prodcction [sic] standards (unless the Union agrees to submit a job production standard grievance to arbitration). The costs of the arbitrator shall be divided equal-

tion 4, of the collective bargaining agreement provides:

> Whenever an employee is to be given a disciplinary layoff or discharge, he *shall* first be suspended and before he is required to leave the plant, he *shall* be offered by his supervisor a suspension notice outlining the misconduct resulting in the suspension. No further discipline shall be imposed until the matter is first discussed between the Grievance Committee and Management at a meeting held the first work day following the day the disciplinary suspension was imposed. If the issue is not resolved at this meeting, Management *may* proceed with the discipline it deems appropriate. The Union may then protest the issue further through the Grievance Procedure, provided a grievance signed by the grievant is submitted to Management no later than the next work day following the day of the Management-Committee meeting.
>
> ... If it shall be found that the employee has been improperly suspended, he shall be reinstated to his regular job with such pay and benefits for time lost as may be fair and equitable and agreed to by the parties.... [Emphasis supplied.]

The language is couched in the imperative tense, except that the company is given the option to "proceed with the disciplinary action it deems appropriate" if the Management-Committee meeting fails to resolve the dispute, and the union is given the option of filing a formal grievance to seek arbitration of the matter. It is a procedure which the parties have agreed to adopt.[3] Neither this Court nor any arbitrator may question its terms or look beyond its terms unless the language employed by the parties is ambiguous and in need of interpretation consistent with the notions of common sense, so-called industrial common law, and industrial or shop customs or practices.

The Court does not consider this clause ambiguous. The procedure cited above sets forth in a clear and concise manner the steps to be taken before any employee is discharged or suspended by the employer for whatever reason. This provision guarantees an employee certain procedural rights, including a right of notice and a right to have his union meet with the employer in an attempt to work out the difficulties before the discharge becomes effective. If such a meeting does not result in a resolution of the dispute, the employer is given the authority to "proceed with the discipline it deems appropriate," including a discharge of the employee. It is then for the union to decide whether or not the disciplinary action taken by the employer should be challenged and resolved by arbitration. If taken to arbitration, and if the arbitrator finds that the employer's position is correct, the disciplinary action stands; if it is determined that the union's protest carries more weight under the circumstances, then the contract provides that the employee be reinstated. The Court here does not attempt to outline the respective burdens of proof shouldered by each party in this regard. Rather, it merely attempts to demonstrate that the language in Article V, Section 4, of this contract is unambiguous and in need of no further interpretation by a court or an arbitrator.

The arbitrator's opinion and award contains the following findings of fact: (1) The discharged employee was competent; (2) he had trouble complying with the employer's rules on absenteeism, rules which only recently had been toughened; (3) the employer had been experiencing a great deal of trouble with absenteeism; (4) the discharged employee had "significant personal difficulties," which to a person at 21 years of age "may well have seemed insurmountable"; (5) Article V, Section 4, of the collective bargaining agreement requires that the

---

ly between the parties. The arbitrator's decision shall be final and binding on the parties.

**3.** The recitals included before Article I of the contract state that the company, the international union, and the local union all agree to all terms contained therein. Furthermore, Article

XXII binds all parties to all of the terms of the agreement for the duration of the contract, leaving each party free to give appropriate notice of a desire to terminate or modify the contract in the event renegotiation of the pact is to take place. *See also* Article XVIII, Section 9, of the contract.

employee be suspended before he files a grievance, the contract does not state whether or not such a suspension constitutes a "review suspension," and such a procedure, being devoid of alternatives, is "offensive," distorts due process, "shocks the conscience of [the] arbitrator," and amounts to double jeopardy; and (6) the procedural rules urged by the union in support of reinstatement of the employee present insufficient cause for the reversal of the decision to discharge the employee. Award, at 7–9. It appears from a further review of the pleadings and briefs submitted by counsel that the discharged employee had been absent 29 times and tardy five times from January 1, 1978, through June 20, 1978.[4] In reviewing the union's position in the course of rendering his opinion and award, the arbitrator commented that the discharged employee's problems stemmed from his girlfriend's pregnancy and numerous family problems, none of which were made known to the employer until the time of the discharge. Award, at 3–4. The arbitrator also observed that the position held by the discharged employee was considered by the employer as crucial to the operation of the plant, for without the operation of the machinery entrusted to this employee, the plant would have to shut down. The arbitrator also noted that there had been testimony that the job performed by the discharged employee was "difficult and dangerous" and could not be handled by any employee. Award, at 4.

---

4. Award, at 2; Brief in Support of Plaintiff's Motion for Summary Judgment, p. 3. At the oral argument on the parties' motions, the plaintiff advised the Court that the employee discharged by the company was reinstated after the arbitrator's award was handed down. That employee continued working for the company until resigning at a later date. Accordingly, a resolution of this matter before this Court will allow the employee and his union a remedy limited to the period of time beginning with his discharge and ending with his reinstatement, less any time covered by the balance of the arbitrator's award respecting a modification of the suspension imposed.

The arbitrator's award reads:

*Analysis*

Courts must refrain from reviewing the merits of an arbitration award, for the settling of labor disputes by arbitration is favored. *United Steelworkers v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 596, 80 S.Ct. at 1360. But the federal courts are free to vacate an arbitrator's award where the arbitrator has overstepped the bounds of his authority. As the Supreme Court has observed:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; *he does not sit to dispense his own brand of industrial justice.* He may of course look for guidance from many sources, yet *his award is legitimate only so long as it draws its essence from the collective bargaining agreement.* When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 597, 80 S.Ct. at 1361 (emphasis supplied). Accordingly, an arbitrator has no authority to disregard or modify the plain and unambiguous provisions of any collective bargaining agreement; his authority to serve as an arbitrator is granted by the agreement itself, and the limits of his authority are set forth in that agreement. *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin*, 594 F.2d 1093 (6th Cir. 1979); *Timken Company v. United Steelworkers of America, supra.* If an arbitra-

I set aside the discharge, the company not having sustained its burden and suspend the grievant for two months from June 20th through August 20, 1978. I retain jurisdiction of this dispute for four months.

I appoint Joseph R. Daniel and Don King to serve as my aides in making sure that this difficulty of absenteeism does not recur as pertains to this grievant, or at least is drastically minimized. I want to assure myself that [the employee] resolves this difficulty. A further hearing may be held in the event that the problem continues.

[The employee's] wages and fringes shall recommence August 20, 1978 less any payments he may have received as an offset. Award, at 9–10.

tor's award deviates from the plain meaning of a provision in the parties' collective bargaining agreement, the award must find support in the contract itself or in prior practices demonstrating a *de facto* relaxation of the literal language of the agreement. *Detroit Coil Co. v. Intr'l Ass'n of M. & A. Workers, supra,* 594 F.2d at 579, *citing N F & M Corp. v. United Steelworkers of America,* 524 F.2d 756, 759 (3d Cir. 1975). Particular terms in a contract must be given their ordinary meaning in the absence of evidence indicating that the parties to the contract intended to expand or otherwise deviate from that meaning. *Detroit Coil Co. v. Intr'l Ass'n of M. & A. Workers, supra,* 594 F.2d at 560, *citing Monongahela Power Co. v. Local 2332, IBEW,* 566 F.2d 1196, 1200 (4th Cir. 1976).

1. Is Article V, Section 4, of the parties' agreement ambiguous and subject to interpretation by an arbitrator?

█ As this Court has already indicated, it does not consider Article V, Section 4, of the parties' collective bargaining agreement ambiguous. Two options exist in a provision otherwise couched in the imperative tense, *viz.,* the employer may proceed with or abort plans to discipline the employee as it deems appropriate, and the union may initiate arbitration of the dispute by filing a grievance in accordance with the other terms of the parties' contract. The procedure set forth in this provision is clear, and the arbitrator is required to refrain from tampering with this provision.

2. If Article V, Section 4, is unambiguous, did the employee receive all of the procedural rights granted to him under the terms of the parties' agreement?

█ The Court does not find any evidence in the record which would contend that the employee was discharged without first having received all of the procedural rights guaranteed under Article V, Section 4, of the contract. The arbitrator's opinion and award does not reflect any such deficiencies, and the union has not raised any such deficiencies in making its motion for summary judgment in this Court. However, the procedural safeguards afforded the employee are implicated in this case by virtue of the arbitrator's personal dissatisfaction with the procedure adopted by the parties. Award, at 9. As a result, the Court has conducted a thorough review of the record before it to make sure that at a minimum the employee received the procedural rights given to him by Article V, Section 4. The Court concludes that based on the record before it, no rights granted to the employee involved in this case were denied by the employer. Accordingly, nothing in the arbitrator's opinion and award legitimately can be said to arise out of a failure on the part of the employer to comply with the dictates of Article V, Section 4, insofar as the employee's procedural rights were concerned. Thus, the arbitrator's allusions to violations of "due process" and some form of guarantees against double jeopardy simply do not find any support in the record, and as such will not be considered by this Court as dispositive of this matter in any way.

3. If the applicable contractual provision is unambiguous, and if the employer complied with all procedural guarantees enjoyed by the employee, does an independent basis for the arbitrator's award exist such that the arbitrator reasonably could have concluded that the employer's discharge of the employee lacked "just cause" under the circumstances?

In *Timken Company v. United Steelworkers of America, supra,* the Sixth Circuit was faced with a challenge to an arbitrator's award which reinstated a discharged employee. The employer argued that the award utterly disregarded a clear provision of the parties' collective bargaining agreement to the effect that the employer reserved the right to promulgate rules governing the operation of the plant, including rules concerning striking or scuffling with fellow employees. The record revealed that the employee in question struck a company inspector with an open hand. Such conduct constituted a violation of a company rule which prohibited any employee from striking or fighting with a fellow employee.

The company discharged the employee, and the union filed a grievance, thereby initiating an arbitration of the dispute. Before holding that the district court correctly affirmed the award of reinstatement handed down by the arbitrator, Judge Miller said:

Upon consideration of the Agreement in its entirety, we are persuaded that the arbitrator had the power to construe and determine its meaning with respect to the issue here presented. It is true that [the contract] reserved to the company "all the customary and usual rights, powers, functions and authority of management," except as they are "specifically abridged or modified" by the Agreement, which would normally include the right on the part of the company to formulate unilaterally rules of conduct and penalties for violations. *It cannot follow from such reserved power that a legitimate dispute could not arise with respect to the method or manner in which the company should exercise its managerial functions or the imposition of penalties in individual cases.* Indeed, other contractual provisions indicate that it was the intention of the parties to vest in the arbitrator the authority to determine whether an employee had been discharged "improperly" or without just cause.... It is now axiomatic that matters of interpretation and application of collective bargaining agreements are for the arbitrator and not for the courts. In fact, the Agreement before us ... specially confers upon the arbitrator the power "to decide grievances involving the *interpreation* [sic] or *application* of this Agreement *or disciplinary action* ..." (Emphasis supplied). Concededly the same article contains the provision that the arbitrator shall have no power to substitute his discretion for the company's discretion in cases where the company is given discretion by the Agreement. This clause ... could reasonably be interpreted by the arbitrator to refer to the reserved power of the company to exercise the customary functions of management, including the establishment of rules of conduct, but not to impinge upon his explicit authority "to decide griev-

ances involving ... disciplinary action...." Again the right to construe the contract would be the question presented, a right granted, as we have seen, in specific terms to the arbitrator.

*Timken Company v. United Steelworkers of America, supra,* 492 F.2d at 1179–80 (emphasis supplied).

■ Article V, Section 1(c), expressly confers on an arbitrator the power to "interpret [the] Agreement and apply it to the particular case under consideration."[5] The Court is aware of the proviso which limits an arbitrator's power under the contract, and the Court agrees with the plaintiff that if the arbitrator's award in this case added to, subtracted from, or in any way changed or modified the terms of the parties' agreement, then the award should be vacated. The ultimate resolution of the dispute in this case turns on whether the arbitrator's award interpreted and applied the parties' collective bargaining agreement to the situation involving the discharged employee, or merely constituted the arbitrator's own form of industrial justice and changed or modified the terms of that agreement. For the reasons which follow, the Court concludes that the arbitrator applied Article V, Section 4, to the facts involving the discharged employee and found that the discharge of that employee in light of his "numerous personal difficulties" ultimately made known to the employer at the time of discharge constituted disciplinary action taken without just cause. Accordingly, the arbitrator's award will be upheld and enforced.

The arbitrator—and not this Court—had the entire record before him. He was able to hear and weigh all of the testimony in this matter. The Court will defer to his findings, for it may not second-guess those findings without doing violence to the *Steelworkers Trilogy.* The arbitrator's fourth finding of fact indicates that the discharged employee's absenteeism was attributable to his "significant personal difficulties." As the plaintiff acknowledged in its brief and at oral argument, the employ-

5. *See* note 2 *supra.*

ee's personal problems were made known to the employer at the time of the discharge. Brief in Support of Plaintiff's Motion for Summary Judgment, p. 3. The arbitrator was charged with the task of deciding whether the employer's discharge of the employee in question could be considered as disciplinary action taken with just cause even though the employer knew—albeit at a very late date—the reasons for the employee's problems with complying with the company's policy on absenteeism and tardiness. This was a difficult responsibility undertaken by the arbitrator, and required him to analyze carefully all of the evidence presented by the parties so that a fair result might be reached.

The critical finding of fact is the fourth finding. There was evidence in the record that the employer was not aware of the employee's personal problems before initiating the disciplinary procedure, and there also was evidence that the employee consciously withheld these reasons. However, evidence also existed that the employer ultimately learned of the personal problems "at the time of discharge." Award, at 4; Brief in Support of Plaintiff's Motion for Summary Judgment, p. 3. It is impossible for the Court to determine from the record whether the employer learned of the employee's personal problems *before* exercising its option to take any disciplinary action which it deemed appropriate pursuant to Article V, Section 4, or *after* having discharged the employee. In either event, however, this matter is not one for this Court to decide, and it is not a matter which the parties might introduce at this level. The resolution of such a question is committed to the sound and considered judgment of the arbitrator to whom the parties have entrusted a decision on the ultimate question of reinstatement. This Court cannot interfere with that judgment without overturning the *Steelworkers Trilogy.* Instead, this Court's review of the arbitrator's award must be restricted to whether or not he overstepped his bounds, and the Court finds that he has not.

Accordingly, the arbitrator's award was rendered in a manner consistent with his powers. His fourth finding of fact substantiates his position that the company discharged the employee in question without just cause. The burden of proof in establishing just cause in such cases is on the employer, and whether or not the employer sustains this burden is for the arbitrator to decide. *See* Gorske, *Burden of Proof in Grievance Arbitration,* 43 Marq.L. Rev. 135 (1959) (collecting cases). The arbitrator in this case apparently decided that the company did not sustain its burden of proof on this critical and dispositive issue. This Court is loathe to upset that decision absent other compelling considerations.

4. If an independent basis for the arbitrator's award exists such that the arbitrator reasonably could have concluded that the employer's discharge of the employee lacked "just cause" under the circumstances, was the award nevertheless patently influenced by the arbitrator's personal disdain for the agreed procedure governing disciplinary action?

One of the compelling considerations which the Court considers plausible in this case is the possibility that the arbitrator's award was patently influenced by his personal disrespect for the procedure outlined in Article V, Section 4, of the contract. Indeed, the plaintiff has argued strenuously that the gist of the award stems from the arbitrator's personal dissatisfaction with the terms of the contract, and therefore merely constitutes a tortured reading of those provisions so as to avoid a result which he personally considers unjust. As already mentioned, no arbitrator may substitute his own judgment for that of the parties when applying the terms of the contract. But the Court does not believe that in this case the arbitrator allowed his personal opinion to control his decision.

The contract gives an option to the employer to decide whether or not disciplinary action should be taken in the event the Management-Committee meeting fails to resolve the parties' differences. It is apparent from the language in Article V, Section 4, that the union did not agree that the

employer *must* discharge the problem employee if the Management-Committee meeting cannot resolve the dispute. Rather, the contract provides that the employer *"may proceed with the discipline it deems appropriate."* Article V, Section 4 (emphasis supplied). The employer retains an option. If it exercises the option and discharges the employee, the union *may* file a grievance and initiate an arbitration of the dispute. As this Court views the contract and the record in this matter, such a grievance necessarily focuses on whether or not the company's exercise of its managerial discretion constituted an action taken with just cause. If it did, then the employer would be sustained through arbitration; if it did not, then the union would prevail. Thus, the question so presented is akin to the issues presented in *Timken*, wherein the court recognized that a "legitimate dispute" could exist as to "the method or manner in which the company should [have] exercise[d] its managerial functions or the imposition of penalties in individual cases." *Timken Company v. United Steelworkers of America, supra*. The arbitrator decided in favor of the union, and this Court affirms that award.

There is yet the matter of the arbitrator's expressed opinion that Article V, Section 4, is "offensive." At the outset, the Court notes that such language has no place in an arbitrator's opinion and award. Whether or not a particular provision of a collective bargaining agreement is offensive is within the province of only the signatories thereto to decide. The arbitrator's suggestion that "[t]he parties should revise the language" stands in the same light. Award, at 9. With these observations out of the way, the Court considers the award not to have been patently influenced by the arbitrator's personal opinion. Perhaps the comments were the product of the arbitrator's zeal in attempting to explain further the reasons for his having found in favor of the union. In any event, however, the Court does not consider these comments to have been patently influential in the arbitrator's ultimate decision. The award can be sustained on independent bases, and on those grounds the Court affirms the award.

The Court has considered carefully the *Amanda, Detroit Coil*, and *Nestle* cases in support of the plaintiff's position. In each of those cases, the arbitrator clearly overstepped the bounds of his authority in handing down his award. The distinguishing feature in the case before this Court is that the arbitrator's award draws from the essence of the contract itself. Accordingly, whether this case is analyzed strictly under the principles espoused in the *Steelworkers Trilogy* or under the theories set forth in *N F & M*, the result must be the same. Inasmuch as it is the judgment of this Court that this case is analogous to *Timken* and distinguishable from *Amanda, Detroit Coil*, and *Nestle*, the arbitration award must be upheld and enforced.

*Conclusion*

For all of the foregoing reasons, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the arbitration award handed down on February 14, 1979, will be enforced. The defendant has petitioned for attorney's fees incurred in defending this action and in seeking enforcement of the arbitration award. This Court has the power to award such fees as damages against a party who refuses without justification and in bad faith to abide by an arbitration award. However, given the difficulty the Court experienced in deciding the issues raised by the parties, and given the language contained in the arbitrator's opinion and award, the Court believes that the plaintiff proceeded in good faith in seeking review of that award under Section 301 of the Labor Management Relations Act. Accordingly, defendant's petition for attorney's fees is denied. *See Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO*, 597 F.2d 1138 (8th Cir. 1979), *cert. denied* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52; *Fabricut, Inc. v. Tulsa General Drivers, Warehousemen and Helpers, Local 523*, 597 F.2d 227 (10th Cir. 1979).

IT IS SO ORDERED.