LOCAL 217, INTERNATIONAL UNION OF ELECTRIC, RADIO & MACHINE WORKERS, affiliated with American Federation of Labor-Congress of Industrial Organizations, Plaintiff,

v.

HOLTZER–CABOT CORPORATION, Defendant.

Civ. A. No. 67–350.

United States District Court
D. Massachusetts.

Dec. 22, 1967.

Mark G. Kaplan, Angoff, Goldman, Manning & Pyle, Boston, Mass., for plaintiff.

Allan A. Tepper, Alvin M. Glazerman, Snyder, Tepper, Berlin & Katz, Boston, Mass., for defendant.

OPINION

JULIAN, District Judge.

This is an action brought by the plaintiff Union to enforce compliance by the defendant employer with the award of an arbitrator. This Court has juris-

diction pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 185. Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

The defendant corporation (the "Company") is a Delaware corporation with its principal place of business in Boston, where it manufactures, sells, and distributes electrical motors, component parts, and related products. There is no dispute over the Company's involvement in activities affecting commerce within the meaning of the National Labor Relations Act. 29 U.S.C. §§ 152 and 185.

Plaintiff (the "Union") is the collective bargaining representative of the Company's employees.

On August 23, 1963, the Company and the Union entered into a collective bargaining agreement which was in effect for two years. In September of 1965 a supplemental contract (the "Contract") was signed, incorporating for an additional year those provisions from the 1963 contract which affect this case.

On February 4, 1966, during the effective period of the Contract, the Company suspended without pay for one week one of its employees, Edward J. Nolan, for allegedly making a false, vicious or malicious statement concerning another employee. Pursuant to the procedure authorized by the Contract, the Union filed a grievance protesting the suspension, but the parties were unable to resolve the dispute through the grievance procedure. Accordingly the Union requested, and the Company agreed, that the dispute be submitted to arbitration in accordance with Section 42 [1] [the arbitration section] of the Contract. The parties agreed to submit the dispute to a single arbitrator. It was further agreed that the issue to be submitted for his final and binding determination [2] would be the following:

"Was employee Edward Nolan suspended for just cause and, if not, what should the remedy be?"

A hearing was held before him on May 4, 1966, at which both parties were represented by counsel. On October 13, 1966, the arbitrator issued the following award:

"Edward Nolan was not suspended for just cause. He shall be made whole for lost wages resulting from the suspension, and his record corrected to show a written disciplinary warning for his misconduct on February 4, 1966."

The Company has refused to comply with the award, contending that in making the award the arbitrator had exceeded his authority and violated the provisions of the Contract. The Union, after unsuccessfully demanding compliance with the award, instituted this suit seeking enforcement.

The arbitrator's findings of fact are substantially as follows:

The incident which gave rise to the dispute occurred in the Company's factory on the afternoon of February 4, 1966.

Hoven, an industrial engineer in the employ of the Company, was assigned to Department 30 to determine why production was below what was expected. His presence there created unrest among the employees.

An employee returning from an inspection in Department 30 suggested to Nolan, who was chief steward, that he had better get over there because of the unrest he had just observed. In response to the suggestion Nolan went to Department 30 and asked the steward

---

1. The pertinent provisions of Section 42 of the Contract are quoted later in this opinion.

2. Section 42 of the Contract contains essentially the same provision, namely:

"A decision by a majority of the arbitrators shall be final and conclusively binding upon the parties hereto and upon any employees affected thereby * * *."

what it was all about, and was told that "it was Hoven again." Nolan knew what the steward was referring to because he had heard complaints about Hoven from Department 30 employees earlier in the week. As a result of this conversation with the steward, Nolan approached Hoven near the foreman's desk and asked,

"What are you trying to do, push these people out on the street? You've gone too far."

Hoven replied,

"If you have any complaints take them to Mr. Tweedy [the Company's president]."

This reply "indicated that he had no intention of discussing the matter with Mr. Nolan * * * and * * * was the type of inappropriate remark which could be expected to generate more heat than light." Nolan became very upset and reacted angrily to Hoven's suggestion that complaints about him should be referred to the Company's president, and in a loud voice said to Hoven,

"In my opinion you are nothing but a stool-pigeon and an asshole."

This language was heard by the foreman and by several other employees in the vicinity.

Hoven immediately walked away from Nolan and went directly to the office of the plant superintendent. The personnel manager of the Company was with the superintendent in the latter's office at that time, and Hoven recounted the incident to both men, explaining that no prior conversation led up to this display of temperament. The foreman was called into the office, and he confirmed Hoven's version of the incident. It was subsequently agreed that the Company could not condone the type of language Nolan directed to a member of management and that, since this violated Group II Rule (c) of the Factory Rules, it called for a one-week suspension without pay for the first offense and dismissal for a second offense. It was learned that Nolan had no other disciplinary infractions in his 25 years

of service with the Company. The foreman was instructed to inform Nolan that he would be suspended for the week of February 7.

Neither the steward nor Nolan was asked to state his version of the incident prior to management's decision to impose a suspension. Unrest among the employees did in fact exist. They were "disturbed and unhappy about the real or fancied activities" of Hoven.

Nolan was wrong to lose his temper despite the provocative nature of Hoven's remark to him, and he was even more blameworthy for accusing Hoven of trying to push the men into the street.

The arbitrator found that the remarks directed to Hoven by Nolan "were intended to be, and were, abusive and disrespectful, and if it was not for the many mitigating circumstances which were not considered by management, the Arbitrator would have been compelled to uphold the discipline imposed in this case."

The collective bargaining Contract contained the following provisions:

"Section 6. * * *

* * * * * *

"(c) * * *

1. Nothing in this agreement shall limit the Company in the exercise of its rights and functions of management under which it shall have, among other things, the right to discharge for just cause, to discipline, to hire, transfer, promote or suspend employees * * * and the right to promulgate and to require employees to observe rules and regulations not inconsistent with the terms of this agreement * * *.

2. The Union recognizes the rules and regulations of the Company now in effect relating to the conduct and discipline of the employees * * * and recognizes the right of the Company at all times to preserve and enforce such rules by discharging for just cause, suspending or disciplining em-

ployees failing to comply with the same. * * *"

Among the Factory Rules in effect at all pertinent times was the following:

"31. *Personal Conduct.*

* * * The extent of any disciplinary action will depend upon the seriousnes of the offense in the judgment of the Factory Management, with due regard for previous records of factory rules observance.

As a guide for personal conduct, there are listed below certain acts of misconduct that should be avoided for the good of all. These actions or rule violations are classified into three categories: the least serious rule-violations are listed under Group I, the more serious under Group II, and the most serious under Group III.

\* \* \* \* \* \* \* \* \* \*

*Group II.*

\* \* \* \* \* \* \* \* \* \*

c. The making of false, vicious, or malicious statements concerning another employee * * *.

\* \* \* \* \* \* \* \* \* \*

f. The use of abusive, obscene, profane, or threatening language to fellow employees.

\* \* \* \* \* \* \* \* \* \*"

"PENALTIES FOR FAILURE TO OBSERVE COMPANY RULES.

\* \* \* \* \* \* \* \* \* \*

*Group II*

| First Violation of any Group II Rule. | One week's suspension without pay. |
|---|---|
| Second Violation of same rule or two first violations of different Group II Rules. | Dismissal. |

\* \* \* \* \* \* \* \* \* \*"

———◆———

The arbitration provisions are set forth in Section 42 of the Contract. The pertinent parts are these:

"If any grievance arises out of this agreement which has not been satisfactorily adjusted through the grievance procedure * * * and provided that such grievance shall arise from differences between the Company and the Union regarding the interpretation of this agreement, the Union may submit such grievance to arbitration. * * * It shall be the function of the arbitrators, and they shall be empowered, except as their powers are limited below * * * to make decisions in cases of interpretations of the terms of this agreement, provided that (a) the arbitrators shall have no power to add to or subtract from, or modify any of the terms of this agreement * * * (c) the arbitrators shall have no power to substitute their discretion for the Company's discretion in cases where such discretion is reserved to the Company in this agreement * * *. A decision by a majority of the arbitrators shall be final and conclusively binding upon the parties hereto and

upon any employees affected thereby.
* * * "

■■ The sole question in this case is whether the arbitrator exceeded his authority in making his award. The scope of arbitration is a matter of contract, John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 546–547, 84 S. Ct. 909, 11 L.Ed.2d 898, and the extent of the arbitrator's authority is something bargained for in the contract. Therefore, if the authority to make the award cannot be found or implied from the arbitration provision of the Contract, then the arbitrator exceeded his authority in holding the suspension without pay to have been an excessive penalty. Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 1964, 8 Cir., 330 F.2d 562.

■ The penalty for violations of Group II Rules was a matter left to the discretion of the Company by Section 6 of the Contract and by Factory Rule 31. The arbitrator was precluded by Section 42 from modifying the penalty simply because he thought a written disciplinary warning was more appropriate. Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., supra.

The arbitrator's award is inconsistent with the finding that Nolan intentionally used abusive language to a fellow employee. Having found this fact the arbitrator lacked authority under the Contract to alter the penalty.

The Union relies heavily on United Steelworkers of America v. Enterprise Steel & Car Corp., 1960, 363 U.S. 593, at page 597, 80 S.Ct. 1358, 1361, 4 L. Ed.2d 1424, where the Supreme Court stated:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations."

The Court there went further, however, to note that

"The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet *his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.*" (Emphasis supplied.)

The arbitrator's finding that Nolan intentionally used abusive language to a fellow employee was in substance a finding that he had violated Factory Rule 31, Group II(f). This rule expressly authorizes the Company to impose the penalty of suspension for one week without pay for its violation. The arbitrator lacked authority to substitute a lesser penalty simply because he thought mitigating circumstances rendered the penalty imposed too severe. In changing the penalty as he did, the arbitrator was dispensing "his own brand of industrial justice." This he may not do.

The plaintiff's motion for summary judgment is denied.

The defendant's motion for summary judgment is granted.