**ARCO–POLYMERS, INC., Appellee,**

v.

**LOCAL 8–74, affiliated with the Oil, Chemical And Atomic Workers International Union, Appellant.**

No. 81–2420.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) on Feb. 16, 1982.

Decided Feb. 22, 1982.

Rehearing Denied March 18, 1982.

David E. Rosenbaum, Philadelphia, Pa., for appellee.

Ernest B. Orsatti, Jubelirer, Pass & Intrieri, P.C., Pittsburgh, Pa., for appellant.

Before SEITZ, Chief Judge, SLOVITER, Circuit Judge, and VanARTSDALEN,* District Judge.

**OPINION OF THE COURT**

PER CURIAM:

Local 8–74 (the Union) appeals from a final order of the district court vacating an arbitration award. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

I.

Labor relations between appellee Arco-Polymers, Inc. (the Company) and the Union were governed by a collective bargaining agreement that provided: (1) "Employees absent from work without good and sufficient cause for more than four (4) consecutive days shall be subject to discharge" (article XXVI, section B(1)); and (2) "Em-

---

* Honorable Donald W. VanArtsdalen, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

ployees shall be discharged only for just cause" (article XVI, section J(1)). On March 7, 1980, the Company discharged employee Larry Anderson for being absent from work for more than four consecutive days without good cause. Anderson grieved his discharge.

The arbitrator found that Anderson was absent between February 6 and February 25, 1980; that "when he attempted to return on the 25th he was unable to show 'good and sufficient' cause for his absence"; that Anderson presented a note to the Company doctor from a physician dated February 15 which stated that Anderson "was in the office today for a complete checkup"; that the note "did not indicate that [Anderson] had been ill since that date, or between February 8 and 25"; that Anderson gave the Company doctor another slip which he said showed a visit to Rochester Emergency Room on February 8; that the "hospital had no such Account Number" as appeared on the slip; that the Company doctor "found nothing wrong when he examined [Anderson] on February 25, 1980—nothing disabling in his knees or any observable signs of influenza on that date"; that "as disclosed at the hearing a common attack of influenza would not have disabled Anderson from February 5, 1980 to February 25, 1980"; that, of the twenty-eight Company employees discharged for absenteeism since 1968, twenty employees had been discharged for absences of more than four days without "good and sufficient cause" under article XXVI, section B(1); that the Company doctor, "a Board eligible and sufficiently experienced psychiatrist, suspected earlier that Anderson had a mental problem that influenced his absenteeism"; and that, if Anderson had a "knees problem," he could be discharged for continued absenteeism despite his illness. The arbitrator also discussed the relationship between article XXVI, section B(1) and article XVI, section J(1). He stated:

Contrary to ARCO's assertion at the hearing, the burden of proof remains with the employer not the employee to show good and sufficient cause.... Professors Elkouir [and Elkouir] state in

their treatise "How Arbitration Works," at P. 621:

"Discharge is recognized to be the extreme industrial penalty since the employee's job, his seniority and other contractual benefits, and his reputation are at stake. Because of the seriousness of this penalty, the burden generally is held to be on the employer to prove guilt on [sic] wrong doing, and probably always so where the agreement requires 'just cause' for discharge."

Article XVI, Section [J], Paragraph 3 of the current Contract provides

"If after thorough investigation it is found that an employee has been unjustly discharged, the employee shall be reinstated with full back pay for the time lost."

. . . .

The attempt of ARCO at the hearing to inject Anderson's overall disciplinary record including absenteeism should be ignored. We are concerned here with employee absence from work and ARCO's own progressive discipline policy seems to have been effective there; he had not be[en] disciplined for absenteeism for approximately 11 months prior to his discharge.

The arbitrator also noted that the Union "respectfully submits that Larry Anderson has been unjustly discharged, and requests that he be reinstated to his former position with full back pay."

In his opinion, the arbitrator stated:

On the question of "just cause" for discharge the Company's post hearing brief lists three known Arbitrators who agree with the Company that a specific provision on discharge, such as we have here on absenteeism, takes precedence over a general provision, i.e., Art. XVI, J(3) [sic] or the Arbitrators' Wolff, Ray or Kelliher decisions cited in the Union's post hearing brief.

The arbitrator did not, however, indicate whether he found ambiguity in those provisions. The next sentence, the beginning of

the penultimate paragraph, states: "The Union's statement in its post hearing brief that 'the very purpose of progressive discipline is corrective or remedial rather than punitive.' I wholeheartedly agree."

The arbitrator issued an award ordering immediate reinstatement of Anderson with no loss of seniority or other benefits, but without backpay. The Company commenced this action in the district court, 517 F.Supp. 681, to vacate the arbitrator's award. The district court concluded: "Once the arbitrator made the finding of fact, as he did ..., that Mr. Anderson failed to show good and sufficient cause for his nineteen-day-absence, the arbitrator was bound to affirm the discharge unless there was a basis in the record to modify or nullify that express contractual right." Finding no such basis, the district court vacated the award.

## II.

The Union makes two principal arguments in support of its contention that the district court erred in vacating the arbitration award: (1) there is a rational basis for the arbitrator's implicit finding that the grievant was not absent from work without good and sufficient cause for more than four consecutive days; and (2) even assuming that the arbitrator found that the grievant was absent for more than four consecutive days without good and sufficient cause, the arbitration award drew its essence from the collective bargaining agreement and should thus be enforced. The Company argues: (1) that the district court properly concluded that the arbitrator found that Anderson was absent for nineteen days

without cause; and (2) that the district court properly found that the arbitrator's award exceeded his contractual authority. For purposes of our discussion, we will assume, without deciding, that the district court correctly concluded that the arbitrator found that Anderson was absent for nineteen days without cause. Thus, the issue before us is whether the arbitrator exceeded his power under the collective bargaining agreement by nonetheless awarding reinstatement to Anderson.

"[T]he scope of judicial review of an arbitrator's award is severely limited." *NF&M Corp. v. United Steelworkers*, 524 F.2d 756, 759 (3d Cir. 1975). The district court must enforce an award "so long as it draws its essence from the collective bargaining agreement."[1] *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), this court held that an arbitrator's award "draws its essence from the collective bargaining agreement" if:

> the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Id.* at 1128. "As described by Professor Gorman, this standard requires only 'minimal rationality' of the arbitrator's decision."

---

**1.** We recognize that this is only one of several possible grounds for vacating an award deemed arbitrable. An award may be vacated where it is shown that there was fraud, partiality, or other misconduct on the part of the arbitrator; or where the award violates a specific command of some law—usually the National Labor Relations Act; or because the award is too vague and ambiguous for enforcement; or because of inconsistency with public policy.
*Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128–29 n.27 (3d Cir. 1969) (citations omitted). Neither party suggests that the prop-

er remedy for this award is to order the case recommitted to the arbitrator. Assuming that such a remedy is available when an award is incomplete, ambiguous, or self-contradictory, see, e.g., *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960); *Hart v. Overseas Nat'l Airways Inc.*, 541 F.2d 386, 392 (3d Cir. 1976), we do not think it is necessary to send the parties back to the arbitrator. Here, the award itself is clear and readily enforceable, and the parties only dispute whether the rationale behind.the award can support it.

*Virgin Islands Nursing Association's Bargaining Unit v. Schneider*, 668 F.2d 221, 223 (3d Cir. 1981) (citing R. Gorman, Labor Law 586 (1976)).

The message is clear: federal courts are not to substitute their judgment for that of the arbitrator because " '[i]t is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.'" *Ludwig*, 405 F.2d at 1125 (quoting *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362). "[T]he interpretation of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrators misconstrued a contract' does not open the award to judicial review." 405 F.2d at 1128 (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n.4, 76 S.Ct. 273, 276 n.4, 100 L.Ed. 199 (1955)). *See* R. Gorman, *supra*, at 585 ("[T]he task of the court [is] to determine whether the arbitrator has resolved the grievance by considering the proper sources . . . .").

> This policy appears to rest upon two grounds: first, it is considered as an expeditious and relatively inexpensive means of settling grievances and thus as a factor in contributing to labor peace, and second, it obviates the enormous burden which would rest upon the judiciary if it should be required to settle, case by case, the endless number of grievances and disputes, many of them over trivial matters, which inevitably occur as between employers and employees.

*Timken Co. v. United Steelworkers*, 492 F.2d 1178, 1180 (6th Cir. 1974).

Moreover, courts should not disturb ambiguous, unclear, and even deliberately opaque arbitration opinions because "the policy in favor of the peaceful resolution of labor disputes through arbitration outweighs any damage which arbitration might cause." *Amalgamated Meat Cutters Local 195 v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1120 (3d Cir. 1975). In *Enterprise Wheel*, the United States Supreme Court said:

> The opinion of the arbitrator in this case, as it bears upon the award of back pay beyond the date of the agreement's expiration and reinstatement, is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of submission. Or it may be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to "the law" for help in determining the sense of the agreement. *A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not reason for refusing to enforce the award.* Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement.

363 U.S. at 597–98, 80 S.Ct. at 1361 (footnote omitted) (emphasis added). It is irrelevant whether the courts agree with the arbitrator's application and interpretation of the agreement. *See NF&M Corp.*, 524 F.2d at 760.

Thus, the scope of our inquiry is narrow. While the arbitrator's task is to interpret the clauses of the agreement, a reviewing court may only determine whether the arbitrator's award was " 'totally unsupported by principles of contract construction.'" *Johnson Bronze Co. v. UAW*, 621 F.2d 81, 82 (3d Cir. 1980) (quoting *Ludwig*, 405 F.2d at 1128). Specifically, the issue before us is whether the arbitrator exceeded his authority under the agreement by refusing to apply article XXVI, section B(1) of the agreement to the facts of this case. If the arbitrator's award can possibly derive from an interpretation and application of the clauses of the agreement, the courts are precluded from refusing to enforce his award.

The Union recognizes that article XXVI, section B(1) specifically provides that the absence of an employee without good and sufficient cause for more than four days subjects an employee to discharge. It cannot be said with absolute certainty, however, that discharge under this section is "strictly a function of management." *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (interpreting term "strictly a function of management" as "referring only to that over which the contract gives management complete control and unfettered discretion"). The arbitrator's award permits the inference that he considered whether discharge under article XXVI, section B(1) is strictly a function of management once it is found that the employee was absent without good and sufficient cause or whether the arbitrator has the authority, based upon article XVI, section J(1) to reinstate an employee upon a finding that the employee was not discharged for just cause. It is also possible that "shall be subject to discharge" suggested to the arbitrator that the clause was nonmandatory. *But see Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692, 695 (10th Cir. 1977) (finding "no ambiguity in the use of 'may' rather than 'will.' The provision gives the employer the option to discharge or not.").

Thus, the arbitrator might have found that all discharges are subject to the "just cause" provision in article XVI, section J(1) and that consequently the contract authorized him to apply all the surrounding facts and circumstances to his interpretation of the contract to determine whether or not discharge is proper. As the court noted in *Mistletoe*: "In a proper case an arbitrator . . . may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge." *Id.* at 695. Thus, it would not necessarily have been inconsistent for the arbitrator to have found that Anderson had no "good and sufficient cause" for his absences but that the Company had no "just cause" to discharge him. Such an interpretation would certainly not manifestly disregard the language of the agreement or lack support from principles of contract construction.[2] The arbitrator's award may represent an implicit resolution of an inherent tension between sections B(1) and J(1). Certainly it was his obligation to resolve any conflicts in construction.

If the arbitrator had explicitly set forth this analysis of the relationship between sections B(1) and J(1) of the contract, we could not say that he was modifying the agreement or exceeding the authority granted to him by the parties. Likewise, had the arbitrator issued his award without an opinion there would be no basis to vacate the award. *Cf. Schneider*, 668 F.2d at 222 (declining to exercise supervisory power to require arbitrators to provide a record of reasons for award). The fact that the arbitrator wrote an opinion, albeit one that might be viewed as confusing and subject to various interpretations, should not cause the award to be vacated. A court should not substitute its interpretation of a contract for that of the arbitrator simply because the arbitrator's analysis is opaque. *See Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361.[3] We cannot say that the

---

2. If the arbitrator indeed found that Anderson was discharged without "just cause," it would seem that Anderson should have been entitled to backpay under art. XVI, § J(3). No backpay was awarded. Neither party, however, discusses this possible tension between the award and art. XVI, § J(3) as reason for not inferring that the arbitrator found no "just cause." We think that it is possible to infer that the arbitrator found no "just cause" and simply misapplied § J(3), which is not a concern of the courts. *See NF&M Corp.*, 524 F.2d at 760.

3. Thus, we also reject the Company's argument that, in view of the arbitrator's unequivocal reference to "corrective discipline" near the end of his opinion, that must be the reason for the reinstatement order, not the fact that art. XVI, § J(1) supersedes art. XXVI, § B(1). Given, however, that no reasons must be given for an award, the courts are not free to determine which finding the arbitrator relied upon in making his award. Rather, the court is limited to the inquiry whether the arbitrator could possibly have made a contract interpretation that

arbitrator's award does not draw its essence from the contract.

The analysis we have used to examine the agreement is not without case support. In *Kewanee Machinery Division v. Local 21, International Brotherhood of Teamsters,* 593 F.2d 314 (8th Cir. 1979) (employee violated employer's unilaterally adopted rule), an employee was discharged because he had exceeded the established two absences per month standard. The arbitrator sustained the grievance and reinstated the employee with backpay. The employer contended that the right to discharge was strictly a function of management and the arbitrator's award of reinstatement was beyond his authority where the employee had violated the rule. The United States Court of Appeals for the Eighth Circuit rejected the employer's argument, stating:

> On its face, the agreement before us contains two clauses governing the discharge of employees, one of which provides that discharges be only upon proper cause. Thus, an arbitrator *could hold* that [the Company] does not retain complete control over discharges. In so holding, the arbitrator's award took its [essence] from the collective bargaining agreement.

*Id.* at 317–18 (emphasis added). *See also IAM, Local 389 v. San Diego Marine Con-*

struction Corp., 620 F.2d 736, 738–39 (9th Cir. 1980) ("[T]he arbitrator does have the power to determine *when* a matter is subject to Company discretion. When two plausible interpretations of a clause of a collective bargaining agreement exist, an arbitrator's choice of one or the other ought to be honored.") (emphasis in original); *Timken Co.,* 492 F.2d at 1179 ("[I]n the present case the arbitrator could fairly construe the contract to confer upon himself the power to determine whether under the particular facts presented the employee was 'properly' discharged, even though he was technically found guilty of committing the act of striking the inspector.").[4]

In *Affiliated Food Distributors, Inc. v. Local 229, International Brotherhood of Teamsters,* 483 F.2d 418, 420 (3d Cir. 1973), cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974), this court said that subsequent specification in a contract impliedly limits the meaning of a preceding generalization. *See Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir. 1973). Where, however, it is possible that the arbitrator could have been interpreting the contract, his failure to apply correct contract principles is irrelevant; the arbitrator's contract interpretation must be irrational before a reviewing court may disturb the award because it is "totally unsupported by principles of contract construc-

---

supports his award. We have already concluded that the arbitrator's award here permits the inference that he was merely interpreting the contract.

**4.** The Company, on the other hand, argues that the courts have uniformly vacated awards that reinstate employees who violate specific contract provisions calling for discharge. The Company cites and discusses many cases in support of this provision. *See, e.g., International Bhd. of Firemen & Oilers v. Nestle Co.,* 630 F.2d 474 (6th Cir. 1980); *Monongahela Power Co. v. Local 2332, IBEW,* 566 F.2d 1196 (4th Cir. 1976); *Amanda Bent Bolt Co. v. UAW, Local 1549,* 451 F.2d 1277 (6th Cir. 1971); *Local 342, UAW v. T.R.W., Inc.,* 402 F.2d 727 (6th Cir. 1968), cert. denied, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969); *Truck Drivers & Helpers Union Local 784 v. Ulry-Talbot Co.,* 330 F.2d 562 (8th Cir. 1964); *Textile Workers Union, Local 1386 v. American Thread Co.,* 291 F.2d 894 (4th Cir. 1961); *Litvak Packing Co. v. Amalgamated Butcher*

Workmen, Local 641, 455 F.Supp. 1180 (D.Colo.1978); *Local 217, Union of Electrical Workers v. Holtzer-Cabot Corp.,* 277 F.Supp. 704 (D.Mass.1967). We need not, however, engage in a protracted discussion of these cases, with their particular contract discharge clauses, specific offense clauses, and respective findings of the arbitrators. Assuming that the cases stand for the proposition for which they are cited, that our case is not distinguishable, and that this court would adopt the legal proposition advocated by the Company, the issue before us, the Company argues, would be whether the contract unequivocally reserves to the employer the right to discharge employees for the specific conduct set forth and whether the arbitrator found that Anderson engaged in the prohibited conduct. As we noted above, however, to preclude enforcement, the contract must not permit any inference that the arbitrator could reinstate the employee. We do not think this contract forecloses that inference.

tion." *See Ludwig*, 405 F.2d at 1128. We do not think that the arbitrator's award in this case is irrational.

The Company argues that its uniform past practice of discharging employees who violate article XXVI, section B(1) is an independent ground for vacating the award. There is no doubt that such a practice is relevant to the question facing the arbitrator, *see Warrior & Gulf*, 363 U.S. at 581–82, 80 S.Ct. at 1352–53 ("[A]rbitrator's source of law [includes] the industrial common law—the practices of the industry and the shop ...."), and perhaps to the courts where the arbitrator has looked to those practices as part of the agreement, *see NF&M Corp.*, 524 F.2d at 759; *H. K. Porter Co. v. United Saw Workers*, 333 F.2d 596, 600 (3d Cir. 1964). We do not, however, think it is relevant to the question before this court: whether the arbitrator's award draws its essence from the contract. *But see Timken Co. v. Local 1123, United Steelworkers*, 482 F.2d 1012, 1014 (6th Cir. 1973) (vacating an arbitration award where arbitrator's award was contrary to shop practices). The only way this uniform past practice could have any relevance to our inquiry is if the Company could show that it was a uniform past practice accepted by the Union to discharge all employees who have been found absent for more than four days without good and sufficient cause. The statistic alone does not preclude a finding that employees may have been absent without good and sufficient cause yet not discharged for lack of "just cause."

### III.

The order of the district court will be reversed and the case remanded for proceedings consistent with this opinion.