SUN PETROLEUM PRODUCTS CO.

v.

OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, LOCAL 8–901, Appellant.

SUN PETROLEUM PRODUCTS CO., Appellant,

v.

OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, LOCAL 8–901.

Nos. 81–2865, 81–2866.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) June 21, 1982.

Decided July 7, 1982.

---

Alfred J. D'Angelo, Jr., James J. Sullivan, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant.

Warren J. Borish, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellee.

Before GARTH and BECKER, Circuit Judges, and MUIR,* District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

In a suit filed by Sun Petroleum Products (Sun) against the Oil, Chemical, & Atomic Workers International Union (the Union), the district court vacated an arbitration award which sustained a grievance submitted by the Union. We hold that the district court erred in vacating the Award, thus, we reverse.

### I.

During negotiations leading to a collective bargaining agreement in 1977, Sun agreed to reserve certain inside painting work for its own union employees. In exchange, the Union permitted Sun to reorganize certain of its maintenance force, including painters, into a "builder mechanic group." This agreement was reflected in Item 13 of a 1977 Letter of Understanding, which provided:

> In consideration of the 1977 creation of the Builder Mechanic Department, Company and Union agree that no painting contractor will paint the inside of the buildings within the Refinery.

(A. 270)[1]

In October 1979, Sun was obliged to repair certain badly deteriorated concrete floors in one of its warehouses. (A. 167a–168a). Sun contracted with First State Maintenance Co. of Wilmington, Delaware to repair the floors. The process which First State contracted to undertake involved scrubbing, scarifying,[2] and acid-etch-

---

* Honorable Malcolm Muir, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

1. Item 13 was reaffirmed in a 1979 letter of understanding.

2. Scarification involves the use of a diamond bladed machine to detach and remove the upper portions of the floor.

ing the floors. Once the floors were so prepared, First State was then to apply several coatings of moisture coated urethane.

On learning of Sun's contract with First State, the Union filed a grievance claiming that the floor renewal contract violated Item 13 of the Letter of Understanding between Sun and the Union. (A. 36). The grievance could not be resolved by the parties, and pursuant to the arbitration clause in their Collective Bargaining Agreement, the Union submitted a "Demand for Arbitration." (A. 32, 38).

On July 2, 1980, after extensive hearings, the Arbitrator issued an award sustaining the Union's grievance with respect to the urethane coating process. He denied the grievance, however, with respect to scrubbing, scarifying, and acid-etching—or the preparation process. The Arbitrator granted the Union's request for a remedy, requiring Sun to compensate bargaining unit members for the time spent by the outside contractor in performing the coating work (A. 269a).

Subsequently, on November 18, 1980, Sun filed a suit seeking to overturn the Arbitrator's award on the grounds that it deviated from the terms of the Collective Bargaining Agreement. The Union filed an Answer and Counterclaim seeking enforcement of the Award. In an amended complaint, as an additional ground for overturning the award, Sun charged the Arbitrator with bias and demanded that the Arbitrator be disqualified from any further proceedings in the case. Finally, Sun contended that even if the award was upheld, the Union should be precluded from proving damages because of certain of the Arbitrator's "pro-

cedural rulings," which Sun argues prohibited the Union from claiming backpay. Sun asserted that in providing for a backpay remedy, the Arbitrator's award had ignored these earlier procedural rulings. Cross-motions for summary judgment were filed.

The district court denied both motions for summary judgment, but entered an order vacating the award.[3] According to the district court, the Arbitrator's award did not "draw its essence from an interpretation of Item 13." Nevertheless, the district court was unconvinced that the Arbitrator had any bias against Sun, and thus the court remanded the question to the same Arbitrator. (A. 329, 333). Furthermore, the district court held that on remand the Union could prove damages, rejecting Sun's argument that the Arbitrator issued procedural rulings precluding a backpay remedy.

Both the Union and Sun appealed.

## II.

In its appeal at No. 81–2865, the Union seeks to have this Court reinstate the Award of the Arbitrator. According to the Union, the award can rationally be, and was, derived from Item 13 of the parties' Letter of Understanding. We agree, and reverse the order of the district court vacating the award.

## A.

 The scope of review of labor arbitration awards in this Circuit is set forth in *Ludwig Honold Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969). There this Court held that:

[t]he interpretation of labor arbitrators must not be disturbed so long as they are not in *"manifest disregard" of the law, and that "whether the arbitrators mis-*

---

**3.** The district court's order of September 23, 1981 provided:
 1. Plaintiff's motion for summary judgment and defendant's motion for summary judgment are DENIED.
 2. The award of Arbitrator Guy Raymond is VACATED.
 3. The parties are to resubmit the issue to Arbitrator Guy Raymond and the case is REMANDED to him for that purpose.

 4. Arbitrator Guy Raymond is not to use the "reasonable man" standard to resolve the issue.
 5. If Arbitrator Guy Raymond finds in favor of the union, he shall permit the union to prove damages.
 6. The parties may, if they so desire, petition Arbitrator Guy Raymond to recuse himself from this dispute.

construed a contract" does not open the award to judicial review.

"[w]e hold that a labor arbitrator's award does draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of parties' intention. . . .

405 F.2d at 1128 (footnotes omitted) (emphasis added). *Accord, Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299 (3d Cir. 1982); *ARCO–Polymers, Inc. v. Local 8–74,* 671 F.2d 752 (3d Cir. 1982); *NF&M Corp. v. United Steelworkers of America,* 524 F.2d 756 (3d Cir. 1975); *Amalgamated Meat Cutters Local 195 v. Cross Bros. Meat Packers, Inc.,* 518 F.2d 1113 (3d Cir. 1975); *Textile Workers Union of America v. Cast Optics Corp.,* 464 F.2d 577 (3d Cir. 1972). The very narrow scope of review of labor arbitration awards is mandated by the strong Congressional policy of encouraging the peaceful and expeditious resolution of labor disputes by means of binding arbitration. In furtherance of this policy, courts have declined to review the merits of an arbitration award so that both employers and unions can be confident of obtaining the decision of the Arbitrator for which they have bargained. *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596–99, 80 S.Ct. 1358, 1360–62, 4 L.Ed.2d 1424 (1965).

Even under this limited scope of review, we must refuse enforcement, however, when an award reveals that the arbitrator has ignored the parties agreement and "dispense[d] his own brand of industrial justice." *See Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361 (1960). Nevertheless,

[i]f the arbitrator's award can possibly derive from an interpretation and application of the clauses of the agreement, the courts are precluded from refusing to enforce his award.

*ARCO-Polymers, Inc. v. Local 8–74,* 671 F.2d 752, 755 (3d Cir. 1982).

**B.**

Here, the Arbitrator in rendering his award provided a short discussion of the matter in dispute. In his opinion, the Arbitrator wrote in terms of a "reasonable man" approach to the grievance. It is that phrase—"reasonable man" approach—that has triggered the controversy over the enforceability of his award to the Union. The Arbitrator's opinion reads in relevant part:

It is regrettable that the Company did not see fit to discuss the project of refurbishing the concrete floors in the B. P. building with the Union prior to letting the contract.

Using the "reasonable man" approach one could speculate as to what might have come of such a meeting.

This Arbitrator believes under the "reasonable man" test the Company could have rejected the idea of renting equipment and training employees to scarify, etch and otherwise make ready the concrete surface of the B. P. warehouse because it is a highly technical procedure and as the contractor stated in his letter, the preparation process is critical to getting a good bond that will last.

However, applying the same test, it does not seem unreasonable that trained painters in the bargaining unit could apply the urethane coating with some instruction of a minor nature from a contracting firm such as First State Maintenance Company.

\* \* \* \* \* \*

It seems reasonable then, that the Company could have obtained outside experts to prepare the concrete floors, then allowed their own people to apply the coating, (*which certainly could come under the definition of a type of paint or painting process*). (emphasis added)

Both Sun and the district court construed the Arbitrator's discussion as establishing a separate and independent standard for the interpretation of the Collective Bargaining Agreement—a standard having no reference to the terms of Item 13 of the parties' Letter of Understanding. According to the district court, "[The Arbitrator] found a reasonable man in the place of plaintiff would have offered the coating work to defendant's members before contracting it

out. What a reasonable man would have done is irrelevant . . . ." (A. 332–33). Thus, Sun argued, and the district court concluded, that the Arbitrator's award did not draw its essence from the parties' agreement.

### C.

■ We observe at the outset that an arbitrator need provide no reason at all for his award. *See Enterprise Wheel*, 363 U.S. at 598, 80 S.Ct. at 1361. Here, however, the Arbitrator did explain the basis for resolving the grievance as he did. Admittedly, the Arbitrator's opinion did not provide a direct analysis of what constituted "painting" within the meaning of Item 13. Rather, the Arbitrator chose to couch his discussion in terms of a "reasonable man" approach. Yet, we believe that a fair reading of the Arbitrator's opinion reveals that his award is indeed derived from the provisions of Item 13, even though his views were expressed in a somewhat unorthodox fashion.

In sustaining one portion of the grievance, the Arbitrator equated the application of urethane coating with painting, a not illogical conclusion, since the process of coating which was described is not significantly different from a painting process. On the other hand, the Arbitrator denied the grievance as to the "preparation" process, a process which required not only different skills of a rather specialized and technical nature, but also required the use of equipment not generally associated with painting.

Indeed as we read the Arbitrator's opinion, it appears to us that he did no more than apply the Item 13 standard, explaining that it was reasonable from his standpoint to separate the "preparation" from the "painting or coating" process, and that he found this separation to be reasonable in light of the parties' agreement. Certainly, nothing in the Collective Bargaining Agreement prohibits this type of explication. To the contrary, an arbitrator while "confined to interpretation and application of the collective bargaining agreement," *Enterprise*

*Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, is no more required to ignore reason, common sense and logic in his analysis than is any other adjudicator.

■ We are fortified in our conclusion by two recent decisions of this court which establish that when an arbitrator's opinion is subject to varying interpretations, a court may not deny enforcement of the arbitrator's award as long as one interpretation of the opinion suggests the award does draw its essence from the parties' agreement. *See Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 304 (3d Cir., 1982); *ARCO–Polymers, Inc. v. Local 8–74*, 671 F.2d 752, 756–57 (3d Cir. 1982).

In *Mobil*, the Company argued that the Arbitrator had relied on his own sense of equity when he reinstated an employee and disregarded the Company's right to discharge employees for cause. Thus, the Company asserted that the award should not be enforced because the Arbitrator had dispensed his own brand of industrial justice. In response, Chief Judge Seitz, writing for the Court, stated:

> Mobil's conjectures as to how the arbitrator made his decision are certainly not unreasonable, but it is also permissible to read the arbitrator's opinion as simply stating that there was no cause for discharge on December 3 in light of all relevant facts. Like the district court, we believe this latter interpretation of the award is permissible and, because we must presume that an arbitrator does not exceed his authority until he clearly "manifests an infidelity" to the intent of the parties as embodied in the collective bargaining agreement, the latter interpretation of the award is also preferable. Thus, we cannot say that the arbitrator dispensed his own brand of industrial justice in violation of the agreement.

679 F.2d at 304 (citations omitted).

In *ARCO*, a grievance was filed on behalf of an employee discharged for absenteeism. The issue before the Arbitrator involved the interpretation and application of two provisions of the Collective Bargaining Agreement: (1) "Employees absent from work

without good and sufficient cause for more than four (4) consecutive days shall be subject to discharge" (Article XXVI, section B(1)); and (2) "Employees shall be discharged only for just cause" (Article XVI, section J(1)). Although the Arbitrator concluded that the employee had been absent for nineteen days without good and sufficient cause, he ordered the employee reinstated without back pay. The Company argued that once the Arbitrator found no cause for the employee's absence, section B(1) mandated approval of the discharge. The district court agreed and vacated the award.

This court reversed. That the Arbitrator did not explicitly set forth his analysis of sections B(1) and J(1) did not provide grounds for vacating the award. "The fact that the arbitrator wrote an opinion, albeit one that might be viewed as confusing and subject to various interpretations, should not cause the award to be vacated." *ARCO-Polymers*, 671 F.2d at 756.

Here, as we have discussed, the Arbitrator's opinion can fully be read as drawing its essence from Item 13. Finding no "manifestation [of] infidelity" to the intent of the parties, *see Mobil, supra*, we are satisfied that the Arbitrator did not exceed his authority,[4] even though the manner in which his analysis was presented could be questioned, *see ARCO-Polymers, supra*.

## III.

In its appeal, Sun reasserts its contentions that the Arbitrator did not conduct himself impartially and that procedural rulings by the Arbitrator precluded the Union from proving damages.

We have given careful consideration to these contentions and to the district court's discussion of these issues. We have also independently reviewed the record and we are satisfied that the district court did not err in rejecting these arguments.

## IV.

Having concluded that the Arbitrator's award does draw its essence from the parties' agreement, we reverse that portion of the district court's order which vacated the award and which remanded the entire proceeding for reconsideration by the Arbitrator. As to the balance of the district court's order which permits the Union to prove damages and which permits Sun, if it so desires, to petition the Arbitrator to disqualify himself, we will affirm.

Accordingly we will direct that the proceedings be remanded to the Arbitrator for a determination of the damages necessary to implement the July 2, 1980 award.

---

4. Sun also asserts that the Arbitrator exceeded his authority as limited by the issue submitted by the parties. That issue was whether Sun violated Item 13 by contracting out the repair of the concrete floors. This court has recently held that an Arbitrator's interpretation of the *issue* submitted by the parties is entitled to as much deference as the Arbitrator's interpretation of the parties' agreement. *Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 301–302 (3d Cir. 1982). As we have concluded that the award drew its essence from the terms of Item 13, it follows necessarily that the Arbitrator did not exceed his authority as defined by the issue submitted by the parties.