

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-2007

# Merck & Co Inc v. Local 2-86

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Merck & Co Inc v. Local 2-86" (2007). *2007 Decisions*. Paper 942.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/942

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1072
_____

MERCK & CO., INC.,

v.

PAPER, ALLIED-INDUSTRIAL, CHEMICAL AND ENERGY
WORKERS INTERNATIONAL UNION, LOCAL 2-86,

Appellant

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(No. 05-cv-02679)
District Judge:  Honorable John R. Padova

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*.

(Filed: June 14, 2007)

_____

OPINION OF THE COURT

_____

CHAGARES, *Circuit Judge*.

This case concerns the validity of an arbitration award which reinstated an employee who was discharged for falsifying his timecard records. The District Court vacated the award. Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 2-86 (the "Union") appealed on behalf of the employee. For the reasons expressed below, we will affirm the decision to vacate the award.

I.

The material facts are not disputed. The Union and Merck & Co., Inc. ("Merck") are parties to a collective bargaining agreement ("CBA") which sets forth the terms and conditions of employment for Union-represented employees. The CBA expressly states that "[n]o regular employee shall be discharged except for just cause." (A115.) The CBA does not enumerate actions that constitute "just cause" for termination. The CBA provides that "[t]he decision of the arbitrator shall be final and binding on the Company, the Union, and the employee, except that the arbitrator shall have no power to add to, subtract from, or modify any of the terms of this Agreement *or any agreements made supplementary hereto*." (A77-A78) (emphasis added.)

On June 18, 2004, Merck and the Union issued a "Joint Statement" involving the reporting of time on employee timecards. The Joint Statement resulted from an investigation into timecard falsification at Merck's West Point, Pennsylvania facility. By

2

issuing the Joint Statement, Merck and the Union "express[ed] their *mutual agreement* that the intentional over reporting of time, the knowing acceptance of payment for time not worked or other abuses of work time . . . will not be tolerated." (A218) (emphasis added). Merck and the Union agreed that "[t]he intentional over reporting of time or the knowing acceptance of money for time not worked constitutes stealing from the Company and *is dischargeable on a first offense*. . . . The intentional failure to [accurately record actual time worked] *will result in immediate discharge*." (Id.) (emphasis added). The parties further provided that managers and supervisors have no authority to offer, approve or agree to pay employees for time not worked, and that "[t]he 'excuse' that management authorized such an arrangement will not be a defense for the acceptance of money for time not worked." (A219.) The Joint Statement was signed by Axel Johnson, a representative of Merck, and by M. Synder for the Union. Both Johnson and Synder were among the signatories of the CBA.

The Joint Statement was posted in employee areas around the Merck facility, including, as relevant here, Department 281. Michael Poust, a Union-represented employee of Merck, worked in Department 281. He was terminated on March 23, 2005 after an investigation determined that he falsified his timecard records, over-stating the amount of time he worked in 2004 to the tune of 3,824 minutes or 63.7 hours – time not worked but for which he collected pay. Specifically, Poust would report that he arrived on time at 6:50 a.m. provided he arrived within 30 minutes of that time (i.e., by 7:20 a.m.)

3

and would report that he worked until 3:30 p.m. as long as he left no earlier than 3:00 p.m. Poust was aware of the issuance of the Joint Statement in June 2004. However, he did not alter from this practice of time recording until sometime during the fall of 2004 when his supervisor reduced the allowable grace period. Poust's supervisor finally insisted upon accurate time-keeping in February 2005 and Poust complied.

The Union grieved the termination and the dispute proceeded to arbitration. At arbitration, Merck argued that Poust intentionally falsified time records effectively stealing money from the company. In response, the Union argued that Poust merely followed the accepted departmental practice of appending, twice-daily, a 30-minute grace period to his starting and ending times. According to the Union, Poust's actions did not support the charge of deliberate or intentional fraud and termination as a penalty was unwarranted.

The arbitrator agreed with the Union that termination was not justified in Poust's case and ordered Poust reinstated albeit without back pay. In reaching this conclusion the arbitrator compared Poust's over-reporting of time to that of his co-worker Joseph Yaich.[1] Yaich's falsification was apparently more egregious (he exceeded the 30-minute grace period) though it amounted to less time fraudulently reported overall. Yaich was terminated. Believing there to be a significant difference between Yaich and Poust that

[1] Poust's arbitrator also presided over Yaich's arbitration. Yaich fraudulently reported working 2,017 minutes or 33.6 hours that in fact he did not work.

4

merited a different result, the arbitrator found that

> [u]ntil [February 2005], . . . Mr. Poust took full advantage of
> departmental practices regarding arriving late and leaving early, and
> not accounting for the differences between actual time and these
> practices on time cards. He disregarded both the Employee Conduct
> Manual and the joint letter of June 18, 2004 on Reporting of Time.
> He also claimed pay for time worked to which he was not entitled.
> His misrepresentation may not have been deliberate or intentional,
> but it constituted fraud nonetheless. Mr. Poust's actions cannot be
> condoned. Hence, while termination is not justified, a lesser penalty
> is in order.

(A23.)

Merck sought review in the District Court. In its motion to vacate the arbitration award, Merck argued that the Joint Statement was a supplemental agreement to the CBA that expressly and unambiguously provided for immediate discharge for someone found to have falsified time cards. According to Merck, under the CBA the arbitrator had "no power to add to, subtract from, or modify any of the terms of this Agreement *or any agreements made supplementary hereto*," thus, the arbitrator's only recourse was to uphold Merck's decision to terminate Poust. In failing to do so, Merck argued, the arbitrator manifestly disregarded the terms of the Joint Statement. The Union admitted that Poust falsified his timecards, but argued that Poust's actions must be viewed through the lens of the CBA's general "just cause" provision. Because the arbitrator concluded, based on a review of the circumstances, that Poust was simply following an "accepted departmental practice," the Union argued that the award reducing the termination to a suspension cannot be disturbed.

5

The District Court agreed with Merck, concluding that in reducing Poust's penalty to a suspension without pay, "the arbitrator exceeded his authority and impermissibly substituted his own notions of industrial justice." (A7.) Specifically, the District Court held that the reason the arbitrator gave for considering such lesser penalty – that Poust was merely following an accepted departmental practice – was itself expressly disallowed by Merck and the Union as an "excuse" for timecard falsification.

## II.

We have jurisdiction under 28 U.S.C. § 1291. The scope of judicial review of an arbitrator's award is extremely narrow. Arco-Polymers, Inc. v. Local 8-74, 671 F.2d 752, 754 (3d Cir. 1982). However, an arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). We have held that an award draws its essence from the CBA "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).

6

III.

A.

The first issue we consider is whether the Joint Statement supplements the CBA. Merck argues that it does, and contends further that because the Joint Statement indicates that timecard falsification will result in immediate discharge, it overrides any arbitral review for just cause. In other words, it removes the issue of just cause review of Merck's decision to terminate Poust for timecard falsification from the arbitrator's ambit. The Union argues that the Joint Statement cannot be viewed as a supplement to the CBA because it was not ratified by the Union's negotiating committee. Therefore, according the Union, the Joint Statement has no legal effect and certainly does not override any review for just cause.

In our view, both parties overstate their respective positions. Merck's position is not so concrete. Although no magic words are required, we note that the Joint Statement was not titled an "Agreement" and did not include any express language to the effect that it was intended to supplement the CBA. However, it did unequivocally express the parties' "mutual agreement" that timecard falsification "will not be tolerated at the West Point facility." Thus, by its plain terms, the Joint Statement was an agreement, the violation of which "will result in immediate discharge." As for the Union, it offers no evidence or authority that a supplemental agreement must be signed by all members of the negotiating committee to be considered supplemental to the CBA. And, the Union points

7

to nothing that requires a supplemental agreement to modify or amend the CBA before it can, and should, be considered by an arbitrator as the "law of the shop."

The Joint Statement is an agreement with a function. It provides notice to Union members that Merck will strictly enforce a policy of termination for committing timecard fraud. In this way, it supplements the "just cause" provision of the CBA because the Joint Statement articulates the parties' mutually agreed position on timecard fraud. And, it is clear that the Union recognized the Joint Statement as giving notice to Union members that, going forward, Merck would strictly enforce termination as punishment for such conduct;[2] a fact that is demonstrated by the terms of a settlement agreement arising out of the investigation into timecard falsification where the Union agreed to the following:

> 8. The Union agrees that [the employee] should not have accepted money for time that he did not work. The Union agrees to sign a joint statement with the Company, in the form attached hereto as Attachment A, which communicates clearly to its membership that employees should not over report their time or accept money for time not worked *and that the Company will terminate employees found to have engaged in such conduct. The Union agrees that the Company may mail this statement to its members, post it on bulletin boards or otherwise distribute it to the membership.*

(A217.)

We do not doubt that the Union understood that the Joint Statement's purpose was to inform its members that time card falsification constituted grounds for immediate

---

[2] The arbitration award also references Merck's Employee Conduct Manual which "includes as a dischargeable violation 'Deliberate falsification of Company records and documents, including time cards.'" (A16.)

8

termination. Further, by signing the Joint Statement which communicated the parties' unequivocal position and by permitting the publication of the statement to its members, the Union tacitly agreed that termination was the punishment for over-reporting time. Thus, the Joint Statement supplemented the CBA's provision for just cause termination by notifying employees that over-reporting work hours would lead directly to discharge. See Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66, 71-72 (3d Cir. 1985) (valid, enforceable labor contract found where side agreement reflects minimum features of a formal legal contract including indication that union and company agreed to the posting and that the terms of the agreement were the subject of negotiations).

The Union points out that, pursuant to its By-Laws, the Master and Local Bargaining Committees consist of multiple members. The Union argues, therefore, that the Joint Statement could not be a modification of or amendment to the CBA because the Joint Statement was not ratified by the Union's negotiating committee, as was the CBA itself. As noted above, the Joint Statement was signed by M. Synder for the Union, who held the title of Plant Chairman and by Axel Johnson, who at the time was Merck's Director of Labor Relations. According to the Union, Synder lacked singular authority to modify or amend the CBA.

Whether Synder had authority to modify or amend the CBA misses the point. We do not construe the Joint Statement as modifying or amending the CBA, but rather as notice to Union members of Merck's clear intention to discharge employees found to

9

have falsified their timecards. It is fundamental that employees paid by the hour will not intentionally collect pay for time they did not work. The Joint Statement neither modifies nor amends anything in this regard. Accordingly, we conclude that the Joint Statement was an agreement that supplemented the CBA by providing notice to employees that the over-reporting of time "will not be tolerated" and "will result in immediate discharge" "on a first offense." (A218.)

B.

After the Joint Statement was posted in Department 281 in June 2004 and despite the fact that it explicitly stated that "[l]ine management does not have the authority to offer, to approve or to 'agree' to pay employees for time not worked," (A218), Poust continued to follow what the Union argues was "an accepted departmental practice"[3] of over-stating his work hours. This brings us to our second inquiry, which is whether the arbitrator overstepped his authority in reducing Poust's termination to a suspension without pay and in ordering Poust's employment with Merck to be reinstated.

Where a CBA contains both a broad "just cause" clause and a separate clause defining actions that will result in "immediate dismissal," we have held that the discharge is reviewable for just cause, absent a clear indication that discharge under the immediate

---

[3] Certainly the practice was accepted by Poust and his supervisor, but in the face of the Joint Statement, it is clear that Merck and the Union considered this practice "unacceptable." (A218.) We find the Union's argument here to be contrary to the evidence.

10

dismissal clause is "strictly a function of management."  See Arco-Polymers, 671 F.2d at

756 (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584

(1960) (defining "strictly a function of management" as "referring only to that over which

the contract gives management complete control and unfettered discretion")); Super Tire

Eng. Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 124 (3d Cir. 1983).  Here,

there is no indication that Merck and the Union agreed to remove from arbitral review

terminations for timecard falsification.  Therefore, we conclude that the arbitrator had

authority to review Poust's grievance.

However, as the District Court rightly held, the arbitrator overstepped his authority

by reducing Poust's termination to a suspension.  In performing his duty to review the

circumstances surrounding Poust's termination, the arbitrator erroneously relied on the

one reason expressly precluded by the Joint Statement:  that Poust was following some

supervisory-approved practice of receiving payment for time not worked.  The Joint

Statement flatly prohibits line management from offering, approving or agreeing to pay

employees for time not worked.  The Joint Statement emphatically declares: "Any such

arrangement violates Company policy, will not be tolerated and will be grounds for

immediate discharge.  If you are approached by your supervisor and offered such an

arrangement, or become aware of one, then you are expected to report this immediately."

(A218.)  Poust was certainly aware of his department's practice of reporting time, and

after the Joint Statement was disseminated, Poust was on notice of the consequences of

11

continuing to follow such a practice.  Cf. Super Tire, 721 F.2d at 123 (upholding arbitral award reducing summary discharge to suspension absent notice that employer intended to strictly enforce the listed conditions of immediate discharge).

We accord a great deal of deference to the awards of arbitrators.  However, under the facts of this case, the arbitrator's decision that termination was not justified must yield to Merck and the Union's joint agreement that falsifying timecards will result in immediate termination and that a supervisor's condonation of the practice is not an excuse.  We conclude that the arbitrator manifestly disregarded the Joint Statement and exceeded his authority in ordering reinstatement of Poust.

## IV.

Accordingly, for the foregoing reasons, we will affirm the order of the District Court vacating the arbitration award.