**INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS, AFL–CIO, LOCAL NO. 935–B, Plaintiff–Appellee,**

v.

**The NESTLE COMPANY, INC., Defendant–Appellant.**

**No. 78–3649.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 18, 1980.

Decided Oct. 3, 1980.

Ira Michael Shepard, Schmeltzer, Aptaker & Sheppard, Paul Monroe Heylman, Washington, D. C., G. Roger King, Bricker, Evatt, Barton & Eckler, Columbus, Ohio, for defendant–appellant.

Jerry L. Riseling, Perry, Riseling & Boyuk, Columbus, Ohio, Joseph W. Schilder, Clark & Schilder, Sunbury, Ohio, James R. Steller, Westerville, Ohio, for plaintiff–appellee.

Before WEICK and CELEBREZZE, Circuit Judges and JOINER, District Judge.*

WEICK, Circuit Judge.

This appeal is from a judgment of the federal district court enforcing a labor arbitration award pursuant to the jurisdiction provided under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185 (1970). The case was submitted to us on briefs, the record on appeal and arguments of counsel. The sole issue in the case is whether the district court erred in affirming an arbitrator's award ordering the reinstatement, but without back pay, of an employee who had been discharged by his employer for clearly proven insubordination which constituted an absolute ground for discharge under the provisions of the collective bargaining agreement in force between the employer and a labor union.

The collective bargaining agreement provided:

Article II—The management of the plant, the direction of the working force, the right to hire and discharge employees, is vested exclusively in Management, except as otherwise provided in this Agreement.

Article XII—(a) Intoxication, dishonesty, incompetency, *insubordination* or failure to perform satisfactorily the usual, customary duties of the employee, *shall* constitute cause for the dismissal of any employee from the service of the Company. (emphasis added)

(b) Any employee desiring an investigation of his discharge must file a protest in writing with the Union and the Company within three (3) days from the date of the discharge and the matter will *be handled through* the grievance procedure provided in this Agreement. (emphasis added).

The provisions in the agreement governing grievance procedure including arbitration were as follows:

Article XVI—(f) If the grievance is still not satisfactorily adjusted, the grievance may then be referred to arbitration as hereinafter provided.

The provisions with respect to arbitration and the responsibilities of the arbitrator were as follows:

Article XVIII—The arbitrator shall arrange a date, time and place for hearing

---

* Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

the dispute and *shall render a decision on the dispute* within thirty (30) days following the close of the hearing. The decision of the arbitrator shall be binding on both parties. (emphasis added).

Following his discharge, the employee filed a grievance for the alleged unjust termination of his employment which grievance was submitted to arbitration. The arbitrator made the following findings of fact:

1. The grievant "refused a direct order (of his foreman) two or three times, for reasons known only to the grievant. (Arb. Award p. 16).

2. The grievant fabricated the existence of a safety hazard as an excuse for his failure to obey the specific orders of his foreman. The arbitrator stated:

"It appears to me that the safety withdrawal item was a *fabricated* circumstance by way of defense to the termination given the grievant that date for refusal to obey the order of the foreman." (emphasis added). (Arb. Award pp. 13, 16).

3. Grievant further disobeyed the foreman's orders by calling a maintenance man to look over the equipment. (Arb. Award p. 12).

4. The grievant called his foreman a "son–of–a–bitch" in the presence of the Division Manager of the Company and other employees. (Arb. Award p. 14).

The foreman further testified that the grievant was hostile, disrespectful, threatened him with violence and called him other obscene names. The arbitrator did not give credence to this additional testimony of the foreman because it was not corroborated.

The express finding of fabrication of his defense by the grievant is clear indication that grievant's disobedience of the three orders was without any justifiable reason or excuse.

The arbitrator states, after quoting Article XII of the collective bargaining agreement: "Thus, it appears in the collective bargaining agreement that insubordination *may* be just cause for discharge." The col-

lective bargaining agreement, however, uses the word "shall" rather than "may".

In the closing paragraph of his award, the arbitrator makes the following incredible statement:

Because of the seniority of the grievant and because of lack of proof of threats or swearing above and beyond one name–calling of "a son–of–a–bitch" there is insufficient proof in the record to make me believe that the grievant was, in fact, guilty of the vulgarities and threats as alluded to by the Company. For that reason I am going to give the grievant some relief.

IV. *AWARD*

The grievant shall be reinstated to his employment but without any back pay whatsoever and without loss of his seniority or contractual benefits.

Thus the arbitrator ignored his previous specific findings of insubordination by the grievant in his refusal to obey three orders of his foreman and the grievant's fabrication of his real defense, and then because the Company did not corroborate additional items of swearing, vile language and threats of violence, the arbitrator excuses the grievant's insubordination by declining to enforce the discharge provisions in the collective bargaining agreement.

But this is the arbitrator's own brand of industrial justice and is in violation of the provisions of the collective bargaining agreement which mandates and provides that insubordination "shall" be grounds for discharge. It is not for the arbitrator to decide that discharge is too severe a penalty for the insubordination which he found because the penalty, namely, discharge is contractual.

The appellee in its brief concedes: "The only thing that the Company could prove was mere disobedience alone." It was the grievant's refusal to obey three lawful orders of management, calling the maintenance man in violation thereof and calling his supervisor in the presence of other employees a "son–of–a–bitch" that constituted insubordination.

In Black's Law Dictionary, Fifth Edition, the author defines insubordination, with supporting authority, as follows:

State of being insubordinate; disobedience to constituted authority. Refusal to obey some order which a superior officer is entitled to give and have obeyed. Term imports a wilful or intentional disregard of the lawful and reasonable instructions of the employer. *Porter v. Pepsi–Cola Bottling Co. of Columbia*, 247 S.C. 370, 147 S.E.2d 620, 622.

In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1969), the court stated:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

In *Amanda Bent Bolt Co. v. International U., U. A., A., A. I. W.*, 451 F.2d 1277, 6 Cir., we reversed the same District Judge who decided the present case, for affirming an arbitrator's award reinstating strikers who violated their contract by striking and were subject to discharge. In our view, *Amanda* requires reversal in the present case.

In *Detroit Coil v. Intern. Assn. of M. & A. Workers, Etc.*, 594 F.2d 575 (6th Cir. 1979), we held again that an arbitrator is confined to interpretation and application of a collective bargaining agreement, and does not sit to dispense with his own brand of industrial justice citing *Amanda* and other cases.

To the same effect is *Storer Broadcasting Co. v. Astra, Cleveland Local*, 600 F.2d 45 (6th Cir. 1979).

We do not believe that the decisions of this court in *Falls Stamping & Welding Co. v. U. A. W., Local 1194*, 575 F.2d 1191 (6th Cir. 1978) and *Timken Co. v. United Steelworkers of America*, 492 F.2d 1178 (6th Cir. 1974) relied on by appellee, involving collective bargaining agreements with provisions different from the provisions of the collective bargaining agreement in the present case are dispositive.

In our case, the collective bargaining agreement expressly provided that insubordination shall be grounds for discharge. It is clear and unambiguous. It needs no interpretation and we find no provision in it giving the arbitrator power to prescribe the penalty for violation of the collective bargaining agreement or to control the exercise of it by the employer. This power was vested solely in the employer.

The employer was not required to discharge the employee who violated the collective bargaining agreement and in the present case probably would not have done so except for further aggressive acts committed by the employee. The fact that the arbitrator found that such further acts were not corroborated by evidence did not militate against the right of the employer to discharge the grievant for insubordination.

Appellee contends that the arbitrator made no specific findings on insubordination. The arbitrator did make findings as to specific acts committed by the grievant such as his refusal on three occasions to obey orders of his supervisor and his concocting of a spurious defense which constituted insubordination as a matter of law.

The judgment of the District Court is reversed and the cause is remanded with instructions to vacate the arbitrators award and for other relief consistent with our opinion.