ARCO POLYMERS, INC., Plaintiff,

v.

LOCAL 8–74, AFFILIATED WITH the OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, Defendant.

Civ. A. No. 80–1102.

United States District Court,
W. D. of Pennsylvania.

July 10, 1981.

George I. Minch, David E. Rosebaum, Philadelphia, Pa., for plaintiff.

Ernest B. Orsatti, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Plaintiff, the employer-party to a collective bargaining agreement between it and the defendant union, brought this suit under § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, to vacate or modify an arbitrator's award. Cross motions for summary judgment are before the court. Plaintiff's motion will be granted and the defendant's denied.

## BACKGROUND

Plaintiff, a manufacturer of plastic resins, and defendant, a labor organization serving as the collective bargaining representative of plaintiff's employees, are parties to a collective bargaining agreement (Agreement). The provisions of that contract relevant here are: Article XVI which sets forth a grievance procedure for dispute resolution and provides for final and binding arbitration; Section H 1. of that Article which states that "[t]he arbitration procedure shall not be used to change or modify this Agreement in any respect." Section J 1. of the same Article which declares that "Employees shall be discharged only for just cause." and Article XXVI, Section B 1. which provides that "Employees absent from work without good and sufficient cause for more than four (4) consecutive days shall be subject to discharge."

The dispute underlying this case arose when plaintiff notified an employee, one Larry Anderson, that he was discharged pursuant to Article XXVI, Section B 1. The defendant union filed a grievance in response to the discharge notice, and the matter proceeded to arbitration where probational reinstatement of Mr. Anderson was ordered. Plaintiff then filed this suit seeking to have the award vacated or modified on the ground that the arbitrator exceeded his authority under Article XVI, Section H 1. of the Agreement when he

nullified the company's right under Article XXVI, Section B 1. to discharge an employee who failed to show good and sufficient cause for an absence from work of more than four consecutive days. The defendant answered that the award "draws its essence" from the collective bargaining agreement and, therefore, should be affirmed.

## APPLICABLE LAW

The general principles which govern the judicial review of an arbitrator's award are summarized by the Third Circuit in *NF & M Corp. v. United Steelworkers of America*, 524 F.2d 756 (3rd Cir. 1975). We quote relevant excerpts from pages 759–760.

Although the scope of judicial review of an arbitrator's award is severely limited, a court must ascertain whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO v. RCA Corp.*, 516 F.2d 1336 (3rd Cir. 1975). This Circuit has elaborated upon that language:

[A] labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969).

. . . .

If the arbitrator's award has deviated from the plain meaning of a labor contract provision, it must find support in the contract itself or in prior practices demonstrating relaxation of the literal

language. *H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers of America*, 333 F.2d 596 (3rd Cir. 1964). An arbitrator may find compliance with the express terms of the grievance procedure in a labor contract excused by the parties' practical construction of it or "in light of the practice of the shop." *Yellow Cab Co. v. Democratic Union Organizing Committee, Local 777*, 398 F.2d 735, 737 (7th Cir. 1968), *cert. denied*, 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969).

. . . .

An arbitrator is not required to list his reasons for the award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority. *Enterprise, supra.* Further, a court is precluded from overturning an award for errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues. *Amalgamated Butchers, Local 641 v. Capitol Packing Co.*, 413 F.2d 668 (10th Cir. 1969); *Dallas Typographical Union, No. 173 v. A. H. Belo Corp.*, 372 F.2d 577 (5th Cir. 1967); *International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Local 874 v. St. Regis Paper Co.*, 362 F.2d 711 (5th Cir. 1966).

Nonetheless, if an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated. *Electronics Corp. v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d 1255 (1st Cir. 1974); *H. K. Porter, Co., supra.*

. . . .

. . . Whether or not we agree with the arbitrator's application and interpretation of the contract is irrelevant. It is his "construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the con-

tract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

## DISCUSSION

In his opinion, the arbitrator found as a fact that:

Company practice is that when an employee is absent over seven days his time card is pulled and when he returns to work he must be cleared for medical approval through the plant dispensary. There is nothing unusual about this. Anderson had been absent between February 6 and 25 and when he attempted to return on the 25th he was unable to show "good and sufficient" cause for his absence. He did show Dr. Kerns [the plaintiff company's doctor] a slip from a Dr. Sika dated February 15 which stated:

"Mr. Larry Anderson was in the office today for a complete checkup."

It did not indicate that he had been ill since that date, or between February 8 and 25.

Anderson also gave Kerns a slip which he claimed represented a visit to Rochester Hospital Emergency Room on February 8. That hospital had no such Account Number. Kerns himself found nothing wrong when he examined him [Anderson] on February 25, 1980—nothing disabling in his knees or any observable signs of influenza on that date. Confining ourselves strictly to absenteeism, Anderson's record did not improve even after he had been given 3-day and 5-day suspensions in 1979. [Matter in brackets added] Arb. op. pp. 9–10.

Notwithstanding the finding that Anderson had been absent from work for nineteen consecutive days without good and sufficient cause and the clear language of Article XXVI, Section B 1., the arbitrator nevertheless awarded reinstatement.[1] Such

---

1. The award in its entirety states:
   The proper disposition of Larry Anderson's Grievance No. CO–13–80 is that he shall be immediately reinstated to his former job with-

out loss of seniority or other benefits but no back pay, for a probationary period of six (6) months during which he 1) must seek help from the Community Health Center of Beaver

a deviation from the plain meaning of the contract can be justified only if it finds support in the contract itself or if the record reveals past practices which demonstrate a "relaxation of the literal language." *NF & M Corp., supra,* at 759.

However, the arbitrator made no attempt to support his award on either of these bases, and our independent analysis of his opinion, which constitutes the entire record before us, reveals no rational basis or support whatever for the award. *Id.,* at 760. In fact, if anything, his opinion appears to support precisely a contrary award. First, he notes that the plaintiff presented documentation of twenty-eight discharges for excessive absenteeism covering a period of approximately eleven years and finds that in twenty of those terminations the company relied exclusively on the consecutive-absences-clause found in Article XXVI, Section B 1. He draws no specific inference from this finding, but it certainly supports the conclusion that the plaintiff had rather consistently over a significant period of time invoked the literal provisions of Article XXVI, Section B 1. to discharge employees for excessive absenteeism, and, consequently, that there is no basis in this past practice from which one properly could infer any "relaxation of the literal language" of that provision.

The arbitrator next enters into the following discussion of the relationship between Article XVI, Section J 1. and Article XXVI, Section B 1.:

> . . . On the question of "just cause" for discharge the Company's post hearing brief lists three known Arbitrators who agree with the Company that a specific provision on discharge, such as we have here on absenteeism, takes precedence over a general provision, i. e., Art. XVI, J

(3) [sic.] or the Arbitrators' Wolf, Ray or Kelliher decisions cited in the Union's post hearing brief. Arb. op. p. 10.

But, instead of indicating whether or not he found ambiguity in those provisions and, if so, resolving it, the arbitrator abruptly ends his discussion of this subject with the above statement and goes on to an entirely different subject matter, thereby suggesting either that he found no ambiguity or that if he did he implicitly was resolving it in favor of the plaintiff's position.[2] In any event, even if we assume that the arbitrator somehow deemed Article XVI, Section J 1. controlling, there is nothing in his opinion remotely to suggest that he found that the discharge was "unjust," and much in his specific findings and the nature of the award to indicate that he believed the opposite. *See* for example, excerpts from Arb. op. pp. 9–10 *supra,* and the conditional nature of the reinstatement award at fn. 1 *supra.*

■ Thus, the arbitrator, without a record of past shop practices or dealings between the parties to support a finding that the company had waived its prerogatives under Article XXVI, Section B 1., or on some theory of contract construction to suggest the modification or nullification of that provision, was clearly in excess of his authority under Article XVI, Section H 1. of the Agreement when he proceeded to modify it by nullifying the specific, unambiguous, contractual right of the plaintiff to discharge an employee who had been absent for more than four days without "good and sufficient cause."

In that regard, this case is quite similar to *International Brotherhood of Firemen and Oilers, AFL–CIO, Local No. 935–B. v.*

County in at least four (4) visits at the Company's expense . . . certification to Dr. J. D. Kerns .. during the first six weeks of his re-employment and 2) his percentage of absence during his probation must not be greater than that of the plant as a whole.

**2.** Indeed, a contrary finding would have been "totally unsupported by principles of contract construction . . ." *Ludwig Honold, supra* at 1128, since, as the arbitrator's opinion sug-

gests, it is a well established rule of contract construction that " 'a subsequent specification [Article XXVI, Section B 1.] impliedly limits the meaning of a preceding generalization. [Article XVI, Section J 1.]' " *Affiliated Ford Distributors, Inc. v. Local Union No. 229,* 483 F.2d 418, 420 (3rd Cir. 1973), (Matters in brackets added). Accord, *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556 (3rd Cir. 1973).

*Nestle Co., Inc.,* 630 F.2d 474 (6th Cir. 1980) relied on by plaintiff. The collective bargaining agreement in that case provided that "insubordination ... shall constitute cause for the dismissal of any employee from the service of the Company". *Id.,* at 475. The arbitrator made a finding that the grievant refused to obey a direct order of his superiors on two or three occasions, but nevertheless ordered reinstatement of the grievant who had been discharged for insubordination. The Circuit Court vacated the arbitrator's award which attempted to modify the contractual phrase "shall constitute cause" to read "may constitute cause." In reversing the district court, the circuit stated:

> ... [T]he collective bargaining agreement expressly provided that insubordination shall be grounds for discharge. It is clear and unambiguous. It needs no interpretation and we find no provision in it giving the arbitrator power to prescribe the penalty for violation of the collective bargaining agreement or to control the exercise of it by the employer. This power was vested solely in the employer.

> The employer was not required to discharge the employee who violated the collective bargaining agreement and in the present case probably would not have done so except for further aggressive acts committed by the employee. The fact that the arbitrator found that such further acts were not corroborated by evidence did not militate against the right of the employer to discharge the grievant for insubordination. *Id.,* at 477.

*Nestle* re-affirms a settled rule in the Sixth Circuit that an arbitrator may not change or ignore the plain language of a collective bargaining agreement. *See Amanda Bent Bolt Co. v. International Union, United Automobile, Aerospace, Agricultural Implement Workers of America, Local 1549,* 451 F.2d 1277 (6th Cir. 1971).

Under the collective bargaining agreement, the plaintiff had the express right to discharge an employee who was absent from work without good and sufficient cause for more than four consecutive days. Once the arbitrator made the finding of fact, as he did at p. 9 of his opinion, that Mr. Anderson failed to show good and sufficient cause for his nineteen-day-absence, the arbitrator was bound to affirm the discharge unless there was a basis in the record to modify or nullify that express contractual right. *NF & M Corp., supra.* There was no such basis, and it was not the function of the arbitrator to substitute his discretion for that of the employer.

The arbitrator's authority was to construe the collective bargaining agreement and objectively to apply it to the facts. *Nestle, supra.; Detroit Coil Company v. International Association of Machinists & Aerospace Workers, Lodge # 2,* 594 F.2d 575 (6th Cir. 1979); *Amanda, supra.; Timken Company v. United Steelworkers of America,* 492 F.2d 1178 (6th Cir. 1974). Instead, the award is abruptly contrary to the specific factual findings and legal reasoning which precedes it. As such, it is a gross non-sequitur and a classic example of an arbitrator dispensing "his own brand of industrial justice." As a consequence, we find that the award does not "draw its essence from the collective bargaining agreement" *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361 and must be vacated.[3] Accordingly, the plaintiff's motion for summary judgment will be granted and the defendant's motion denied.

---

3. The arbitrator's award is dated June 18, 1980, but the company did not reinstate Anderson until July 11, 1980. The defendant counter claimed against the plaintiff for wages that Anderson lost when the company delayed his reinstatement. To prevail on its counter claim the defendant must establish the validity of the arbitrator's award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Cf Teamsters Local No. 25 v. Penn Transportation Corp.,* 359 F.Supp. 344 (D.Mass.1973). Since the court concludes that the arbitrator's award exceeded his contractual authority, the defendant is precluded from recovering on its counter claim. Therefore, the plaintiff's motion for summary judgment on the defendant's counter claim will be granted and the defendant's cross-motion for summary judgment on its counter claim will be denied.