DIXIE WAREHOUSE AND CARTAGE COMPANY, Plaintiff–Appellant,

v.

GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL UNION NO. 89, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant–Appellee.

No. 89–5426.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1989.

Decided March 22, 1990.

Rehearing and Rehearing En Banc Denied May 2, 1990.

Michael A. Luvisi, D. Patton Pelfrey (argued), Brown, Todd & Heyburn, Louisville, Ky., for plaintiff-appellant.

Ralph H. Logan, Alton D. Priddy (argued), Hardy, Logan, Priddy & Cotton, Louisville, Ky., for defendant-appellee.

Before KEITH and KENNEDY, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

At issue in this appeal is the scope of an arbitrator's authority in interpreting the disciplinary provisions of a collective bargaining agreement. Appellant Dixie Warehouse contends that the arbitrator exceeded his authority by reinstating an employee who had been discharged for using alcohol while on duty. Appellee General Drivers, Warehousemen and Helpers, Local Union No. 89 (Union) argues that deference to arbitral fact-finding precludes the vacation of the award. Under the holdings of *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) and *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir.1989), we are constrained to affirm the district court in upholding the arbitration award.

### FACTS

At the time this dispute arose, Carl Morgan was employed by Dixie Warehouse as a forklift operator. He worked in a building warehousing computer equipment valued at approximately $40,000 a pallet. On the evening of February 17, 1987, Carl Morgan and a co-worker left the warehouse for dinner. Morgan's co-worker received permission from the supervisor to leave. Whether the permission to leave extended to Morgan is disputed. Morgan had been warned orally a week earlier not to leave the premises without permission. The men went to a nearby restaurant where a Dixie Warehouse manager observed them drinking what appeared to be beer with their dinner. Under the collective bargaining agreement between Dixie Warehouse and the Union, the use of alcohol while on duty is cause for discharge without prior warning. Upon return to the warehouse, both men were told to clock out and later were notified that they had been terminated. The letter notifying Morgan of his discharge stated that his discharge was pursuant to Article XIII of the agreement which deals with causes for discharge without a prior warning. However, the letter did not specifically state the use of alcohol as the reason for dismissal. Morgan filed a grievance protesting his discharge.

### The Collective Bargaining Agreement

Three sections of the collective bargaining agreement in effect at the time of the dispute have direct relevance to the issue presented here. Article XI of the agreement provided that discharge of employees for proper cause was the sole prerogative of the employer except to the extent it was specifically limited by the agreement. Article XII, entitled "Disputes and Grievance Procedures," included a clause which stated: "The [Arbitrator] may only interpret this Agreement, and shall not add to, subtract from, or otherwise change or modify it." Article XIII dealt with "Discharge or Suspension" and provided in pertinent part:

> The Employer shall not discharge or suspend any employee without just cause, but in respect to discharge must give at least one (1) warning notice of the complaint against such employee to the employee, in writing, with a copy to the Union, except that no warning notice need be given to an employee before he is discharged or suspended for dishonesty, drunkenness, use of alcoholic beverages or narcotics while on duty....

Under the terms of the collective bargaining agreement, Morgan's grievance proceeded to arbitration.

### Arbitration Award and Supplemental Decision

Arbitrator Donald Leach found that Morgan had drunk beer while on duty. He also stated that discharge was not an unreasonable penalty for the offense and that Dixie Warehouse had consistently enforced the rule. However, the arbitrator also found that Dixie Warehouse had predicated the discharge on two infractions, using alcohol while on duty and leaving the premises without permission—a curious finding in light of the fact that Morgan's discharge

letter stated that he was being discharged in accordance with Article XIII of the agreement which makes no mention of penalties for leaving the premises without permission. Because the arbitrator found that the charge of leaving the premises without permission was not substantiated by the evidence, he reasoned that "it is impossible to determine whether the employer would have discharged on the basis of [using alcohol while on duty]." This, too, is a curious statement given that the co-worker who accompanied Morgan to the restaurant and drank beer was discharged. The co-worker's actions were distinguishable from Morgan's only in that he had permission to leave the warehouse premises. Rather than being "impossible to determine," it seems quite clear what action the company would have taken solely on the basis of drinking while on duty. Furthermore, the arbitrator's own statements that Dixie Warehouse had consistently enforced the rule against use of alcohol and that "no evidence appeared to show a leniency in other cases" belie his perplexity on this point. These considerations notwithstanding, the arbitrator declined to uphold the discharge, instead reinstating Morgan without back pay. As further justification for his divergence from this established enforcement policy, Arbitrator Leach stated in a supplemental decision:

> The arbitrator has power to impose a lesser penalty where the greater one is not supportable in its entirety but is supported in part. The penalty here, a suspension, was authorized in the Agreement as an alternative penalty for drinking during working hours.

Dixie Warehouse filed a complaint in district court seeking vacation of the arbitration award. The district court sustained the Union's motion for summary judgment and issued a partial judgment enforcing the award. Dixie Warehouse appealed.

## ANALYSIS

Dixie Warehouse contends that the district court erred in enforcing the arbitration award because the arbitrator exceeded the limited authority granted to him under the collective bargaining agreement. Under the agreement Dixie Warehouse had the sole prerogative to discharge for proper cause and the right to discharge without prior warning employees who used alcohol while on duty. Furthermore, the arbitrator was denied the authority to modify the agreement. Dixie Warehouse argues that in reinstating Morgan, the arbitrator ignored the clear and unambiguous language of these provisions.

Dixie Warehouse argues further that the award does not draw its essence from the collective bargaining agreement because it is based on erroneous factual and legal bases. Dixie Warehouse contends that Morgan was discharged solely for using alcohol while on duty, not for two infractions as the arbitrator found. In light of the discharge of Morgan's co-worker, it is clear that the company would discharge an employee on the basis of this one offense. Dixie Warehouse also urges that the award's legal conclusion, which requires the two independent, yet cumulative bases for discharge to be proved before the discharge is upheld, is an "absurd, illogical syllogism."

The Union responds that this case is controlled by well-established precedent mandating deference to arbitral fact-finding. The arbitrator found that Morgan's discharge was based on two cumulative bases and that one was not supported by the evidence. Further, the arbitrator found that he had the authority to modify the penalty under such circumstances. The Union contends that a reviewing court is without authority to reconsider the merits of an award and thus the award must stand.

It is axiomatic that courts play a limited role in reviewing the decisions of arbitrators. In time-honored precedent, the Supreme Court outlined the limits of judicial review by stating: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of

the awards." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). As long as an award "draws its essence from the collective bargaining agreement" and the arbitrator does not dispense "his own brand of industrial justice," the award is legitimate. *Id.* at 597, 80 S.Ct. at 1361. In a recent decision, the Supreme Court reiterated these principles and stated further:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Furthermore, the Court stated that "improvident, *even silly,* factfinding" is not sufficient basis for disregarding the arbitrator's determination of facts. *Id.* at 39, 108 S.Ct. at 371 (emphasis added). Clearly, the Supreme Court has established strong precedent for judicial deference to arbitrators' awards.

This court has recognized and heeded the Supreme Court's mandate. In a recent decision, this court cited *Misco, supra,* and noted that the Supreme Court "again advised lower federal courts to be more deferential to the arbitration process." *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir.1989). The facts of *Eberhard* are quite similar to the facts of this case. The collective bargaining agreement contained clauses similar to the ones in issue in the present case. One clause provided that the right to discharge for just cause was the sole prerogative of the employer. Another clause limited the arbitrator's powers to "the application and interpretation of this Agreement as written." The arbitrator had "no power or authority to amend, alter or modify" the agreement. Additionally, Work Rule 13 specifically provided discharge as the penalty for a first offense involving fighting on company time or property. Jerome Handy had an altercation with a co-worker and was discharged for fighting. The company determined that the individual with whom Handy had fought had not violated the work rule and reinstated him without lost time. Handy grieved his discharge and the grievance proceeded to arbitration.

Despite the clear language prescribing discharge for the first offense involving fighting, the arbitrator reinstated Handy. In doing so, the arbitrator found that the company had not been evenhanded in its discipline, thus violating the just cause standard for discharge. He also found that he had the authority to modify the penalty. The company filed a complaint in district court seeking vacation of the award. The district court vacated the award relying partially on the premise that once the arbitrator found that Handy had violated the work rule prohibiting fighting, he was constrained to defer to the penalty of discharge listed in the rule.

On appeal, this court reversed the district court, noting that the scope of the arbitrator's authority is determined by the language of the collective bargaining agreement and the arbitrator's own construction of it. *Id.* at 892. The arbitrator construed the agreement as authorizing him to review the penalty. *Id.* Furthermore, nothing in the collective bargaining agreement or the work rules expressly limited the arbitrator's power to review the remedy. *Id.* Relying on *Misco, supra,* this court held that the arbitrator did not act unreasonably or capriciously in construing the agreement to authorize his review of the penalty. *Eberhard,* 868 F.2d at 893.

Dixie Warehouse contends, as did the management in *Eberhard,* that the arbitrator ignored the plain language of the agreement and exceeded his authority by reinstating Morgan. Dixie Warehouse cites the clauses of the agreement that grant management the sole right to discharge for cause and that prohibit the arbitrator from modifying the agreement. While the argument is appealing, it must be noted that these clauses are almost identical to those in the *Eberhard* agreement. Relying on *Misco, supra,* this court in *Eberhard* stated that where nothing "expressly limits or removes from the arbitrator the authority to review the remedy ... the courts must defer to the arbitrator's construction of the contract." 868 F.2d at 892. In *Eberhard,* as well as the present case, the arbitrator construed the contract as giving him authority to review and modify the penalty. In the absence of a contractual provision that expressly limits or removes the arbitrator's authority to review and modify the penalty, the *Eberhard* precedent requires us to conclude that the arbitrator in the present case did not exceed his authority.

Dixie Warehouse also cites *International Brotherhood of Firemen and Oilers, Local No. 935–B v. Nestle Co.,* 630 F.2d 474 (6th Cir.1980), a case in which this court vacated an arbitration award reinstating an employee who had been discharged for insubordination. The collective bargaining agreement expressly provided that insubordination *"shall* constitute cause for dismissal." *Id.* at 475. Although the arbitrator found that the employee had disobeyed direct orders from his supervisor, he reinstated the employee because he rejected the company's claim that the employee had also used vile and threatening language in addressing his supervisor. This court vacated the award on the grounds that the arbitrator had ignored the "clear and unambiguous" language of the contract. *Id.* at 477. Thus the award did not draw its essence from the agreement and the arbitrator had exceeded his authority.

Although the facts of *Nestle* are similar to the facts of the present case, it is distinguishable. The precise language of the Dixie Warehouse agreement provides that "no warning notice need be given to an employee before he is discharged *or suspended* for ... use of alcoholic beverages or narcotics while on duty ..." (emphasis added). Thus, as the arbitrator noted, suspension is an alternative penalty authorized by the agreement for using alcohol while on duty. In contrast to *Nestle,* the arbitrator did not clearly violate the language of the agreement. Furthermore, *Nestle* was decided before *Misco* and *Eberhard.* In *Eberhard* as in *Nestle,* only one penalty, discharge, was explicitly mentioned. However the holdings of *Misco* and *Eberhard* permit the arbitrator to construe the contract to give him authority to review penalties in the absence of a provision explicitly prohibiting such action.

## CONCLUSION

Precedent requires the conclusion that the award in the present case draws its essence from the agreement and that the arbitrator did not exceed his authority. That result is unfortunate in that it undermines Dixie Warehouse's important, established policy of discharging employees who use alcohol while on duty. Clearly, the company has a legitimate interest in ensuring that employees who use dangerous equipment and handle costly materials are unimpaired by alcohol. However, it is well-established that courts may not review the merits of an award even where the fact-finding is "improvident." *Misco,* 484 U.S. at 39, 108 S.Ct. at 371. Affirmed.