USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1446

 KRAFT FOODS, INC,

 Plaintiff, Appellant,

 v.

 OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION,
 AFL-CIO, CLC, LOCAL 1295,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald Lindsay, U.S. District Judge]

 Before

 Boudin, Stahl, and Lipez, 
 
 Circuit Judges.
 
 
 
 
 Nathan L. Kaitz, with whom Stacy L. Miller and Morgan, Brown
& Joy, L.L.P., were on brief for appellant.

 Robert M. Schwartz for appellee.

February 16, 2000

 
 

 LIPEZ, Circuit Judge. Kraft Foods, Inc. appeals from a
judgment of the district court affirming an arbitration award. The
arbitrator found that Kraft had violated its collective bargaining
agreement (the "Agreement") with the Office and Professional
Employees International Union, AFL-CIO, CLC, Local 1295 (the
"Union") by applying the Agreement's break-in wage provisions to
one class of new employees while paying a second class full wages. 
Finding that the parties had agreed to a break-in wage provision
applying to all new employees covered by the Agreement, the
arbitrator ordered back pay to the workers who had received break-
in wages so that all workers would enjoy full wages during the
period in which Kraft was in breach. Kraft filed a suit in
district court under Section 301 of the Labor Management Relations
Act, 29 U.S.C. 185, arguing, inter alia, that the remedy exceeded
the arbitrator's authority. On cross-motions for summary judgment,
the district court rejected this claim and affirmed the
arbitrator's judgment. We now do the same.
 I.
 We state the facts as the arbitrator found them. See 
United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37
(1987). During negotiations for the 1996-1999 collective
bargaining agreement, Kraft proposed break-in wage rates that would
apply only to newly hired production employees. Although the Union
objected, it eventually accepted break-in rates that would apply to
all newly hired employees rather than just production workers. 
Article 10 of the Agreement reflected this understanding, providing
that "[n]ew employees hired after May 21, 1996 shall be paid at the
rate of eighty percent (80%) of the job rate in the classification
in which the employee is working for the first six (6) months,
ninety percent (90%) of the job rate for the second six months."
 In October, 1997, the Union learned that Kraft had hired
maintenance and power plant employees (the "crafts employees") at
standard wage rates rather than the break-in rates provided for in
the Agreement. However, all new production employees were paid the
break-in wages. The Union filed a grievance challenging the
discriminatory application of the break-in wage provision. The
dispute was submitted to arbitration pursuant to the Agreement. 
Kraft argued that it had agreed only to break-in rates for
production employees; this limitation had been "inadvertently"
omitted from the Agreement. 
 The arbitrator rejected Kraft's claim of mutual mistake,
finding that "there was a meeting of the minds between the parties
that the break-in rates set forth in Article 10 would apply to all
bargaining unit employees hired after May 21, 1996." (emphasis in
original). The arbitrator also concluded that he could not reform
the Agreement as Kraft proposed because Article 43 gave the
arbitrator "no authority to amend, alter or modify this Agreement
or its terms." The arbitrator therefore found Kraft in breach and
ordered it to apply the break-in wage provision evenly until the
Agreement terminated in 1999.
 The more difficult question related to an appropriate
remedy for the past discrimination. The arbitrator found that
there were only two plausible methods of remedying Kraft's unequal
application of the break-in wages. He could order the crafts
workers to remit the wages paid to them in violation of the
Agreement, a remedy that he characterized as "patently unfair" and
one that Kraft and the Union opposed. Or he could order back pay
to the production workers to make up for the compensation they lost
when Kraft "discriminated against them by applying the break-in
rates to them but not to other newly hired [crafts] employees." 
The arbitrator found that this alternative provided "reasonable and
equitable" compensation for Kraft's breach. On appeal, Kraft does
not challenge the arbitrator's finding that it breached the
Agreement. Rather, it argues that the back-pay remedy exceeded the
arbitrator's authority. 
 II.
 The general principles that we must apply are familiar. 
Our review of labor arbitral decisions is extremely narrow and
"extraordinarily deferential." Dorado Beach Hotel Corp. v. Union
de Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2,
3-4 (1st Cir. 1992). "Because the parties have contracted to have
disputes settled by an arbitrator chosen by them rather than by a
judge, it is the arbitrator's view of the facts and of the meaning
of the contract that they have agreed to accept." Misco, 484 U.S.
at 37-38. The arbitrator cannot, of course, ignore the contract
and simply dispense "his own brand of industrial justice." United
Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S.
593, 597 (1960). Rather, the arbitrator's decision must "draw[]
its essence" from the agreement. Id. Provided that the arbitrator
"is even arguably construing or applying the contract and acting
within the scope of his authority," a court may not disturb his
judgment even if it is "convinced he committed serious error." 
Misco, 484 U.S. at 38; see also Advest Inc. v. McCarthy, 914 F.2d
6, 9 (1st Cir. 1990) (quoting Misco). 
 Kraft argues that the arbitration clause of the Agreement
denied the arbitrator the power to order the back-pay remedy. 
Because "[t]he extent of an arbitrator's authority lies within the
language of the contract," we must carefully consider any
restrictions that the Agreement imposes on the arbitrator's power. 
Strathmore Paper Co. v. United Paperworkers Int'l Union, 900 F.2d
423, 426 (1st Cir. 1990). Kraft does not identify any language in
the Agreement explicitly barring back-pay remedies. Rather, it
points to Article 43 which states, in pertinent part, that "[t]he
arbitrator shall have no authority to amend, alter, or modify this
Agreement or its terms and shall limit the decision solely to the
interpretation and application of this Agreement." 
 This standard "no-modification" clause incorporates
general legal principles concerning an arbitrator's authority,
"reinforc[ing] the admonition in Misco that legitimate arbitral
awards draw their essence from the contract." LaRocque v. R.W.F.,
Inc., 8 F.3d 95, 97-98 (1st Cir. 1993) (internal citations and
quotation marks omitted). Thus the clause reminds arbitrators that
their duty is to interpret and apply the agreement as negotiated,
and that they may not reform the contract to do "industrial
justice." Misco, 484 U.S. at 30. The arbitrator here was aware of
this limitation on his authority, noting in his written decision
that while he was "not unsympathetic to the Company's plight,"
Article 43 prevented him from reforming the break-in wage provision
as Kraft advocated, and that Kraft would have to "live with that
bargain for the duration" of the Agreement. 
 While courts disagree on the extent to which a "no-
modification" clause bars arbitrators from looking beyond the
language of the agreement to determine breach, courts agree that
"the fashioning of an appropriate remedy is not an addition to the
obligations imposed by the contract." Tobacco Workers Int'l.
Union, Local 317 v. Lorillard Corp., 448 F.2d 949, 956 (4th Cir.
1971). In United Steelworkers of America v. United States Gypsum
Co., 492 F.2d 713, 718 (5th Cir. 1974), the employer violated the
agreement's requirement that it negotiate a wage increase with the
union. As the union was defunct at the time of arbitration, the
arbitrator ordered the employer to pay a wage increase based on
what it calculated the negotiation would have produced. See id. at
728-29. Although the agreement included a standard "no-
modification" clause, the court held that the salary increase the
arbitrator ordered did not "add[] terms to the contract. In the
context present here his action merely represent[ed] an attempt to
make the union whole for the damage suffered as a result of
Gypsum's breach of the collective bargaining agreement." Id. at
730. Likewise, in Local 879, Allied Industrial Workers of America
v. Chrysler Marine Corp., 819 F.2d 786, 788 (7th Cir. 1987), the
arbitrator imposed a severance plan not provided for under the
contract to compensate for Chrysler's failure to hold required
negotiations prior to the plant closing. Notwithstanding the "no
modification" clause, the court found that the arbitrator's power
to determine breach "further implies the authority to prescribe a
remedy which can be said reasonably to cure the breach." Id. at
789-790.
 Kraft argues that this case is different because the
arbitrator's remedy directly altered the Agreement. In Kraft's
view, it was ordered to "violate the collective bargaining
agreement a second time to remedy its first violation of the
agreement." In a sense, Kraft is right: the arbitrator's back-pay
award had the effect of eliminating the break-in wage clause
entirely during the time period in which Kraft had applied it in a
discriminatory fashion. However, a standard "no-modification"
clause does not limit remedies of this type if such a remedy is
required to cure a breach and is not specifically barred by the
agreement. See Dixie Warehouse & Cartage Co. v. General Drivers,
Warehousemen & Helpers, Local Union No. 89., 898 F.2d 507, 510-511
(6th Cir. 1990) (no-modification clause does not limit remedial
authority "[i]n the absence of a contractual provision that
expressly limits or removes" such authority). When parties wish to
curb an arbitrator's remedial authority, they can draft a contract
that specifically excludes certain remedies (such as back-pay) or
limits these remedies to particular situations. See, e.g.
Resilient Floor & Decorative Covering Workers, Local Union 1179 v.
Welco Mfg. Co., 542 F.2d 1029, 1031 (8th Cir. 1976) (empowering
clause barred arbitrator from awarding "money damages except back
pay in case of wrongful discharge"). Likewise, the parties can
choose to provide pre-negotiated, exclusive remedies for a
particular breach which the arbitrator may not disturb. See, e.g.
S.D. Warren Co. v. United Paperworkers Int'l Union, 845 F.2d 3, 8
(1st Cir. 1988) (arbitrator could not impose his own remedy for
disciplinary violation when agreement itself provided disciplinary
penalties); Georgia-Pacific Corp. v. Local 127, United Paperworkers
Int'l Union, 864 F.2d 940, 946 (1st Cir. 1988) (same). 
 Where, as here, the agreement neither requires nor bars
particular remedies, the arbitrator's discretion "is at its
zenith." Advest, 914 F.2d at 11; see also S.D. Warren, 845 F.2d at
8 ("[I]f the parties do not pre-negotiate remedies, the arbitrator
can fashion them as part of his decisional discretion."). When
such explicit restrictions are absent, we must be mindful of the
Supreme Court's admonition that broad remedial authority is
required to give arbitrators "flexibility in meeting a wide variety
of situations. The draftsmen may never have thought of what
specific remedy should be awarded to meet a particular
contingency." Enterprise Wheel, 363 U.S. at 597. If the 
violation ordered by the arbitrator is designed to correct a prior
breach by the offending party, the remedy must be upheld so long as
it "draws its essence" from the agreement. Id.; see also Local
1445, United Food & Commercial Workers Int'l Union v. Stop & Shop
Cos., 776 F.2d 19, 22 (1st Cir.1985)("Arbitrators are not required
to follow principles of contract law or judicial precedent. The
arbitrator's decision must be simply in the realm of what a judge
might decide.") (internal citation omitted). 
 The remedy in this case meets this standard. To redress
the discriminatory treatment caused by Kraft's breach, the
arbitrator had to choose between the unpalatable pay-back approach
or one that ordered Kraft to provide back pay to the production
workers. While the arbitrator's decision to order back pay
effectively nullified the break-in wage provision during the period
of breach, this result is consistent with the intent of the
original bargain between Kraft and the Union. The Union had
accepted only a break-in wage provision that would apply to all
workers, rejecting Kraft's initial proposal of break-in wages
exclusively for production workers. Forcing Kraft to abandon
break-in wages for production workers during the period in which it
improperly abandoned break-in wages for crafts workers fulfilled
the equality principle embodied in Article 10. The remedy, while
forcing Kraft to ignore a contractual provision, prevented Kraft
from unilaterally adopting the more limited break-in wage provision
that the Union had rejected. As this remedy "draws its essence"
from the Agreement, we will not disturb it. Enterprise Wheel, 363
U.S. at 597.
 Affirmed